VILLAGE OF BROWN DEER, Appellant, v. CITY OF MILWAUKEE and others, Respondents.*

*March 5—April 3, 1962.*

* Motion for rehearing denied, with $25 costs, on June 5, 1962.

208

For the appellant there were briefs and oral argument by *Harold H. Fuhrman,* village attorney, and *John P. Roemer* and *Ralph M. Hoyt,* special counsel, both of Milwaukee.

For the respondents there was a brief by *John J. Fleming,* city attorney, and *Richard F. Maruszewski* and *John F. Cook,* assistant city attorneys, attorneys, and *Marvin E. Klitsner* of Milwaukee of counsel, and oral argument by *Mr. Klitsner, Mr. Harry G. Slater,* deputy city attorney, *Mr. Maruszewski,* and *Mr. Cook.*

GORDON, J. All of the six annexations involved here were prosecuted under sec. 62.07 (1) (a), Stats. 1955. This statute provided in part that:

"(1) *Annexation procedure.* Territory adjacent to any city may be annexed to such city in the manner following:
"(a) A petition therefor shall be presented to the council 1. signed by a majority of the electors in such adjacent territory and by the owners of one half of the real estate within the limits of the territory proposed to be annexed, or 2. if no electors reside in the said adjacent territory signed by the owners of one half of taxable property therein according to the last tax roll, or 3. by a majority of the electors and the owners of one half of the real estate in assessed value; provided, that no petition for annexation shall be valid unless at least ten days and not more than twenty days before any such petition is caused to be circulated, a notice shall be posted in at least eight public places in the municipality."

Most of the issues concern whether the petition for annexation was signed "by a majority of the electors and the owners of one half of the real estate in assessed value."

Each annexation ordinance will be discussed separately.

### 1. *The Corrigan Annexation.*

The total assessed value of real estate in the Corrigan territory was $3,863,796, so that signatures of the owners of at least $1,931,898 of assessed value would be required for a valid petition. However, the trial court found that the petition contained the signatures of the owners of only $1,922,775 of assessed value, and thus there was a deficiency of $9,123. For this reason the annexation ordinance was held invalid by the trial court.

There are four principal issues raised upon the challenge to this annexation:

1. Whether the signature on the petition made on behalf of the Evert Container Corporation was properly authorized;

2. Whether the interest of Mary Cudahy Keogh, the owner of a remainder interest in real estate devised to her by her father, John Cudahy, with an assessed value of $30,297.75 was represented on the annexation petition by a sufficient signature;

3. Whether the signature of Mr. and Mrs. Mulholland on the petition was sufficient to commit a tract with an assessed value of $18,800 in favor of the annexation; and

4. Whether real estate owned by two railroads and an electric power company within the area in question should have been added to the total assessed value of real estate in the Corrigan territory.

We conclude that the assessed valuation of the Evert Container Corporation, in the sum of $231,375, was improperly included in the computation of the total assessed value for which owners had signed on the annexation petition. No determination of any of the other issues, or any combination of such issues, in favor of Brown Deer, could alter the result of invalidation which attends our conclusion that the assessed value of the real estate of the Evert Container Cor-

poration was improperly included on the annexation petition. Accordingly, we do not reach the other issues stated above.

The Evert Container Corporation has an 11-member board of directors. Charles Evert is president of the corporation, the majority stockholder, and a member of the board of directors. Although he discussed the question of his signing the petition with a majority of the members of the board of directors before he actually signed, the evidence is clear that Mr. Evert purported to sign on behalf of the corporation without obtaining either formal authorization from the board of directors or informal authorization as permitted under sec. 180.91, Stats.

Brown Deer contends that Milwaukee has no standing to challenge the authority of the president, Mr. Evert, to sign the petition on behalf of the corporation. As a general rule, if a corporation does not raise the objection that an officer lacked authority to do an act on behalf of the corporation, such objection may not be raised by a third person. 2 Fletcher, Cyc. Corp. (perm. ed.), p. 523, sec. 490.

However, we believe that when a corporation purports to perform a political act, as opposed to a business act, other interested parties may be heard to challenge the validity thereof. Milwaukee is a vitally interested third party. Milwaukee has adopted a valid ordinance consolidating Granville; Brown Deer has adopted an ordinance purporting to annex territory in Granville. Such ordinance takes precedence over Milwaukee's consolidation.

We conclude that an interested municipality may raise the question of the lack of authority of a person purporting to sign an annexation petition on behalf of a corporation. Certainly Milwaukee could challenge the legal title of a person who signed an annexation petition as an owner of real estate. We see no difference in principle.

Sec. 180.30, Stats. 1955, provides:

"The business and affairs of a corporation 'shall be managed by a board of directors. . . .' "

Sec. 180.91, Stats. 1955, provides as follows:

"Any action required by the articles of incorporation or by-laws of any corporation or any provision of law to be taken at a meeting or any other action which may be taken at a meeting, may be taken without a meeting if a consent in writing setting forth the action so taken shall be signed by all of the shareholders, subscribers, directors, or members of a committee thereof entitled to vote with respect to the subject matter thereof. Such consent shall have the same force and effect as a unanimous vote, and may be stated as such in any articles or document filed with the secretary of state under this chapter."

Sec. 180.91, Stats., was adopted in order to permit informal action by the board of directors. Corporations owe their existence to the statutes. Those who would enjoy the benefits that attend the corporate form of operation are obliged to conduct their affairs in accordance with the laws which authorized them. In 2 Fletcher, Cyc. Corp. (perm. ed.), p. 227, sec. 392, it is stated:

"By the overwhelming weight of authority, when the power to do particular acts, or general authority to manage the affairs of the corporation, is vested in the directors or trustees, it is vested in them, not individually, but as a board, and, as a general rule, they can act so as to bind the corporation only when they act as a board and at a legal meeting."

The legislature having specified the means whereby corporations could function informally, it becomes incumbent upon the courts to enforce such legislative pronouncements. The legislature has said that the corporation could act in-

formally, without a meeting, by obtaining the consent in writing of all of the directors. In our opinion, this pronouncement has pre-empted the field and prohibits corporations from acting informally without complying with sec. 180.91, Stats.

One of those who helped draft the Wisconsin Business Corporation Law, Dean George Young, has discussed this section in 1952 Wisconsin Law Review, 5, and he says, at page 19:

> "In addition, informal action may be taken without any meeting under sec. 180.91 by either directors or shareholders upon the unanimous written consent of all entitled to vote upon the subject of the action taken. Permitting corporate action based solely upon written assent, of course, sacrifices whatever wisdom there may be in requiring that decisions be made only after face-to-face discussion, but the advantage of flexibility probably outweighs any disadvantage. In any event, we all know that in fact many corporate meetings are held without the requisite formalities and the waivers and minutes are later prepared *ex post facto* to show compliance with the law. Such subterfuges should no longer be excusable under the new provision."

The presence of apparent authority and estoppel which might prevent the application of this rule in matters which flow in the normal course of business cannot apply where the action of the directors relates to a political determination and is outside of the ordinary course of normal business operations. In *DeBauche v. Green Bay* (1938), 227 Wis. 148, 154, 277 N. W. 147, the court stated that when an elector signed an annexation petition he was "discharging his duty in shaping and influencing this particular affair of government." The signing of a petition which would change the local government under which the corporation functions is more closely analogous to such unusual acts of the corporation as the disposition of its assets, as opposed to acts in the ordinary course of business. In deciding whether to sign

an annexation petition, we believe it is clear that the corporation may not validly act in an informal manner unless it be in compliance with the statutes. 2 Fletcher, Cyc. Corp. (perm. ed.), p. 664, sec. 592.

There can be no doubt as to the rule in Wisconsin in view of the enactment of sec. 180.91, Stats., by the Wisconsin legislature. Fletcher also makes the following statement in his treatise at page 242, sec. 396, with respect to the effect of a statute permitting informal corporate action:

"Of course, a statute may authorize particular acts to be done by the directors acting otherwise than as a board and at a formal meeting. But where it is claimed that the statutes of the state permit the corporation to dispense with this eminently wise and just rule, the construction will be strictly against any such contention."

The fact (1) that Mr. Evert owned 51 percent of the stock of the corporation, or (2) that he may have been accustomed to resolving the problems of the corporation as a sole owner, or (3) that the board of directors met infrequently, or (4) that the corporation subsequently ratified his act, does not derogate from the clear mandate of the statute.

The annexation petition must be valid as of the time it is submitted to the city council. *Blooming Grove v. Madison* (1960), 9 Wis. (2d) 443, 101 N. W. (2d) 809. Accordingly, ratification is of no avail.

## 2. *The Brown Deer Park Annexation.*

The trial court held this ordinance to be invalid because the description of the territory was incorrect. The misdescription involved a strip of land which belonged to another incorporated municipality, the village of River Hills. In view of our conclusion regarding the legal insufficiency of the corporate signature of Manufacturers Products, Inc., we do not reach the question of the inaccurate description.

The total assessed value of the real estate within the Brown Deer Park territory was $118,275. Including the $21,500 of assessed value owned by Manufacturers Products, Inc., the trial court found that $69,308 or over one half of the total assessed value was represented on the petition. If the signature of this corporation is excluded, the petition would be insufficient and the ordinance invalid.

The record establishes that Mr. W. A. Meyer, the president of the corporation and owner of 75 percent of its stock, signed the petition without either formal authorization by the board of directors or informal authorization permitted under sec. 180.91, Stats. For the reasons recited in connection with the Corrigan annexation, we hold this signature to be insufficient; the annexation ordinance based thereon is invalid.

### 3. *The Laun Annexation.*

The trial court held that this ordinance was invalid because an insufficient number of electors signed the petition. Two separate problems are raised in connection with this annexation petition:

(a) Whether the total number of electors should include 11 persons who qualified as electors but who had not registered to vote.

(b) Whether six persons who signed the petition under the heading of "owner" but not under the heading of "elector" could also be counted in the latter capacity.

The trial judge held that the 11 nonregistered electors qualified as electors but that none of the six electors who signed only as an "owner" could also be counted as an "elector."

Sec. 62.07 (1) (a), Stats., requires the signatures of "a majority of the electors in such adjacent territory." Sec. 6.01 sets forth the qualifications for electors; registration is not one of the qualifications. The relevant statutes are

unambiguous and simply do not require an elector to be registered; we are unable to restrict the word "elector" by adding the requirement that he be registered to vote. We are unanimous in our conclusion that the trial court properly refrained from excluding the nonregistered persons who otherwise qualified as electors.

The members of this court are equally divided in regard to the question whether those who signed as "owners" may also be counted as "electors" even though they signed in the former capacity only. Three of the justices (Mr. Justice CURRIE, Mr. Justice FAIRCHILD, and Mr. Justice HALLOWS) believe that a single signature on the petition is adequate to commit the signer to support the petition in both capacities, if in fact the signer is both an owner and an elector. Three other justices (Mr. Chief Justice BROADFOOT, Mr. Justice BROWN, and the writer) believe that each petitioner had a right to choose the form of classification with which he desired to be identified in the petition, and that when a petitioner signs only as an "owner" the court cannot infer the intent of such petitioner also to sign as an "elector."

Under the rule that an equally divided court results in affirmance of the court below, we reach the result that the Laun territory ordinance is invalid. *Hagenah v. Milwaukee E. R. & L. Co.* (1908), 136 Wis. 300, 116 N. W. 843; *Jacobs v. Queen Ins. Co.* (1905), 123 Wis. 608, 612, 101 N. W. 1090.

### 4. *The Tripoli Annexation.*

The total assessed value of real estate in this territory was $169,800, of which $149,200 was owned by the Tripoli Golf Club. The trial court found that the signature on the petition entered on behalf of the golf club was sufficient. Because more than one half of the necessary ownership was represented on the petition, the ordinance was held valid. We agree.

The golf club's president signed the petition as follows: "George C: Kroening Pres. Tripoli Golf Club 2/6/56." In our opinion, the trial judge correctly ruled that this signature reflected a corporate act. It strains reason to hold that this is only the signature of an individual, Mr. Kroening, and that the words "Pres. Tripoli Golf Club" serve only to identify him.

There was no proof presented to show that the corporation's signature was unauthorized and, in the absence of such proof, the signature stands unimpeached.

### 5. *The Johnson Annexation.*

The assessed value of the real estate in the Johnson territory was $2,960,011. The trial court found that the owners of assessed value in the sum of $1,598,535 had signed the petition for annexation. This was over one half of the total and included $210,400 of assessed value of the Good Hope Investment Company. The ordinance was held valid.

The petition was signed on behalf of the Good Hope Investment Company by its president, Ben Lewenauer. The record shows that he signed without either formal authorization by the board of directors or informal authorization by the directors permitted under sec. 180.91, Stats. For the reasons presented in our consideration of the Corrigan annexation, the corporate signature was ineffective. This reduces the assessed value represented upon the petition to under one half. The ordinance based thereon is invalid.

### 6. *The Schroedel-West Annexation.*

The city of Milwaukee adopted an ordinance purporting to annex a portion of Granville referred to as the Schroedel-West territory. The village of Brown Deer disputes the validity of this ordinance and raises three objections:

(a) The city has failed to prosecute the annexation within a reasonable time.

(b) The posting of the notices of intention to circulate the petition of annexation was not in eight public places as required by the statute.

(c) The annexation was not prosecuted in good faith because, during the pendency of this annexation, the city initiated and completed another annexation which included a portion of the same territory involved in the Schroedel-West annexation.

The trial judge held this ordinance invalid on the grounds that the notices were not posted in compliance with sec. 62.07 (1) (a), Stats. We have concluded that the ordinance is invalid because of Milwaukee's failure to prosecute it within a reasonable time and, therefore, we do not reach the other questions referred to above.

The annexation proceedings were initiated by the posting of notices on January 25, 1955. One year and twenty-six days later, on February 21, 1956, the annexation ordinance was adopted. We note that the territory involved consisted of only 1.025 square miles and contained only 70 electors.

In the case of *In re Village of Brown Deer* (1954), 267 Wis. 481, 483, 66 N. W. (2d) 333, this court stated:

"This court held in the *Walsh Case, supra,* in effect, that annexation proceedings must be conducted with reasonable dispatch and completed within a reasonable time. In the absence of legislation fixing a maximum time for the completion of annexation proceedings we cannot fix an arbitrary time therefor, or we would be legislating. We can and do say, however, that annexation proceedings once commenced must be conducted and completed within a time that is reasonable in view of all of the circumstances. The only legislative expression upon the matter since the decision in the *Walsh Case* is that the statute was amended to require that the circulation of petitions for annexation must be commenced within twenty days after the date of posting rather than forty-five days as permitted prior to the amendment. This is an indication at least that the legislature favors a prompt conclusion of annexation proceedings."

In *Brown Deer v. Milwaukee* (1956), 274 Wis. 50, 64, 79 N. W. (2d) 340, the following appears:

"We hold that this annexation, if otherwise valid and if pressed in good faith and completed within a reasonable time, will be effective as an annexation to Brown Deer and withdrawn from the consolidation."

We are persuaded that the city of Milwaukee failed to pursue the Schroedel-West annexation within a reasonable time, and the ordinance must be declared invalid.

*By the Court.*—Those portions of the judgment adjudging as invalid the Corrigan annexation (Ordinance No. 31 of the village of Brown Deer), the Brown Deer Park annexation (Ordinance No. 35 of the village of Brown Deer), the Laun annexation (Ordinance No. 53 of the village of Brown Deer), and the Schroedel-West annexation (Ordinance No. 631 of the city of Milwaukee) are affirmed. That portion of the judgment adjudging as valid the Tripoli annexation (Ordinance No. 32 of the village of Brown Deer) is affirmed. That portion of the judgment adjudging as valid the Johnson annexation (Ordinance No. 34 of the village of Brown Deer) is reversed. No costs will be allowed upon this appeal.

DIETERICH, J., took no part.

CURRIE, J. (*dissenting in part*). I respectfully dissent from the holding of the majority that a third party may question the binding effect upon a corporation of a written instrument executed by its president in the corporate name, be it a contract, or a petition addressed to some public body. Furthermore, as applied to the facts relating to the signing of the annexation petitions by the two corporations in question, Evert Container Corporation and Good Hope Investment Company, I deem the result of this holding to be a serious miscarriage of justice.

Charles Evert, who subscribed the Corrigan tract annexation petition in behalf of the Evert Container Corporation, is the president and majority stockholder of the corporation. Some of the directors resided outside of Wisconsin and the board of directors and stockholders customarily held only an annual meeting. At this annual meeting of stockholders, they customarily ratified all acts of the officers and directors. Hence, it is clear that Evert Container Corporation established a pattern of conduct which, at least by implication, delegated broad power to the president and clothed him with the apparent authority to represent and bind the corporation in all of its affairs and transactions between annual meetings. There was no evidence that the directors or stockholders ever refused to ratify any act performed by Evert as president during the yearly intervals between meetings. Under rather-similar facts in *McElroy v. Minnesota Percheron Horse Co.* (1897), 96 Wis. 317, 71 N. W. 652, this court held that even the corporation was estopped to deny its president's authority to act in a particular matter.

The facts with respect to the Good Hope Investment Company's signature to the Johnson tract annexation petition are even stronger in favor of barring Milwaukee's right to challenge such signature. This corporation holds title to the Byrnwood Country Club. President Lewenauer, who subscribed the petition in behalf of the corporation, discussed the matter informally with the other four directors and obtained their oral approval. After the petition was filed, the directors held a meeting and formally ratified the signing. Attorney A. L. Skolnik, one of the five directors, testified that, for the most part, the directors transacted their business on an informal basis. Either President Lewenauer or Secretary Ritz would telephone the other directors and inform them of any proposed corporate action. The directors would then express their opinion for or against the proposal, and the expression of the majority would govern.

From these facts it is apparent that each corporation desired to join in the annexation petitions. The general rule is clearly established that a third person may not raise the objection that a corporate officer lacked authority to do an act on behalf of the corporation, and thus void the corporate act, if no objection to the act was raised by the corporation. 2 Fletcher, Cyc. Corp. (perm. ed.), p. 523, sec. 490. The apparent theory behind this rule is that the failure of the corporation to object to an unauthorized act done in its behalf constitutes a tacit ratification, and that the policy of the law favors an interpretation which permits parties to rely on acts taken in behalf of corporations.

The majority attempts to distinguish between business acts and political acts of a corporation, and holds that the validity of the latter may be challenged by interested third parties. I see no basis for such a distinction. It would seem that the rationale of the general rule is just as applicable to so-called political acts as it is to strict business acts. Furthermore, what is a political act? Perhaps the instant action was motivated solely by tax considerations. This would make it as much a business decision as would be a decision on any other tax matter. Furthermore, a political act certainly cannot be defined as any transaction in which a corporation deals with a governmental unit. For example, a corporation deals with government when it files written objections, pursuant to sec. 70.47 (7), Stats., against the amount or valuation of the assessment made of its property. The filing of written objections is a condition precedent to its right to later bring court action for relief against the assessment. Would the municipality have the right in such court action to question the validity of the written objections, subscribed in the name of the corporation by its president, because the board of directors had not acted by formal resolution, at a regularly held board meeting, or by written informal action, in the manner authorized by sec. 180.91 to authorize the

president to so act for the corporation? Following the reasoning of the majority opinion, the answer is "Yes."

The majority attempts to justify its distinction by analogy. It states that Milwaukee could challenge the legal title of a person who signed an annexation petition as an owner of real estate, and thus should be able to challenge corporate ownership in a similar manner. This is certainly true. But the city presently can challenge the corporation's title to its real estate without attacking its validity to act. Traditionally, the title of a corporation to property may be challenged by one without the corporate structure, while only the corporation, or one acting in its behalf, has the right to challenge the authority of a managing officer to act for the corporation.

Statutory requirements that a corporation must follow a certain specified procedure, in authorizing action by its president, are made for the protection of the corporation and its shareholders, not as a sword to be used by a third party such as the city of Milwaukee in this action.

The majority concludes that the only way informal corporate action may legally be taken is by strict adherence to the provisions of sec. 180.91, Stats. That statute reads in part that: "Any action required . . . to be taken at a meeting, may be taken without a meeting if a consent in writing setting forth the *action so taken* shall be signed by all . . . entitled to vote with respect to the subject matter thereof." (Italics supplied.) A reasonable interpretation of this statutory language permits the construction that the consent may be signed *after* the action has been taken. Such a construction is more in keeping with the practicalities of corporate action and with the realities of present corporation practice. Here each corporation subsequently ratified its president's act.

The basic decision really boils down to a policy determination. The majority decided in favor of a policy permitting

interested third parties to attack the authority of corporate officers who have acted on behalf of their corporation, where the action has not been attacked by the corporation. It also decided that the only way such action can be taken is by strict adherence to the statutory formalities. The result of this decision is to impugn the ability of both third parties and members of a corporation to rely on acts of corporate officers. The social utility of definiteness of corporation action outweighs the utility of letting a city utilize every insignificant flaw to avoid an annexation. As technical as annexation proceedings now are, it would seem better to look to substance rather than strictly to form.

The better rule would be that an annexation petition, signed in behalf of a corporation landowner by its chief executive officer, is binding on the corporation, unless attacked by the corporation or its shareholders prior to the expiration of the ninety-day limitation period provided by sec. 62.07 (3), Stats. 1955. Therefore, I would hold that the city of Milwaukee has no right in this action to challenge the signatures to the petitions of Evert Container Corporation and Good Hope Investment Company. This would require that the trial court's judgment upholding the Johnson tract annexation be affirmed, and that the validity of the Corrigan tract annexation be determined on the other issues mentioned but not passed upon by the majority opinion.

I am authorized to state that Mr. Justice HALLOWS concurs in this opinion.