STANLEY C. DUROSE, Commissioner of Insurance
The Wisconsin Physicians Service, a division of the State Medical Society of Wisconsin, a licensed, nonprofit service plan, has applied to you, as Commissioner of Insurance, for permission to be reorganized into a stock insurance corporation organized under ch. 611, Stats. You have requested my opinion as to whether you may lawfully permit such a proposed reorganization.
The State Medical Society of Wisconsin (hereafter State Society) exists by virtue of sec. 148.01 (1), Stats., which provides:
 "(1) The state medical society of Wisconsin is continued with the general powers of a corporation. It may from time to time adopt, alter and enforce constitution, by-laws and regulations for admission and expulsion of members, election of officers, and management."
The Wisconsin Physicians Service (hereafter WPS) is a "nonprofit plan" which owes its existence to sec. 148.03, Stats., which provides, in part:
 "148.03 Nonprofit plans for sickness care. (1) The state society, or a county society in manner approved by the state society, shall have the power to establish in the state or in any county or counties therein, a nonprofit plan or plans for the sickness care of indigents and low income groups, and others, *Page 49 
through contracts with public officials, and with physicians and others, and by the use of contributions, cooperative funds, and other means, . . ."
 "(2) Such plans shall be governed by ss. 200.26 and 204.31 (3m) and by no other law relating to insurance unless such law is referred to in ss. 200.26 and 204.31 (3m) and no law hereafter (1969) enacted shall apply to such plans unless they are expressly designated therein or refer to such organizations as are responsible for the operation of such plans." (Emphasis added.)
Section 204.31 (3m), Stats., deals with the construction of accident and sickness insurance policies and is not relevant here.
Section 200.26 (4), Stats., provides:
 "(4) SUBJECT TO INSURANCE LAWS FOR CERTAIN PURPOSES. Such organizations and their agents, plans and contracts are subject to s. 201.045 relating to licensing, ch. 207 relating to unfair methods of competition and unfair or deceptive acts or practices, s. 209.04 (11) relating to agents, ch. 601 relating to the administration of the insurance laws, ch. 620 relating to investments, and to ch. 645 relating to delinquency proceedings, to the same extent and in the same manner as if such organizations were domestic insurance corporations. Such organizations are also subject to s. 201.18 (1) relating to premium reserves except that where risks are written for more than one month and the premium or fee is paid on a monthly basis, the reserve shall be computed at 50% of the monthly premium or fee received each month."
Section 201.045, Stats., provides in part:
 "This section applies to all insurers incorporated or organized under any law of this state except ch. 611, and to nonprofit service plans as defined by s. 200.26.
"* * *
 "The commissioner shall issue to any insurer or plan subject to this section a certificate of authority authorizing it to transact the business of insurance in this state if he is satisfied that it has met all requirements of law and that its methods and practices *Page 50 
and the character and value of its assets will adequately safeguard the interests of its insureds and the public in this state . . . ."
WPS has no independent legal existence. As its name indicates, it is merely a division of the State Society. It is merely a "plan" or activity which the legislature specifically empowered the State Society to "establish."
The expressed purpose of the State Society in the proposed transfer of WPS to a new stock insurance corporation is to place the insurance activities of the State Society into a separate corporate entity, thereby separating such insurance function from the primary medical functions of the State Society. It is proposed that the new corporation would be licensed under sec.201.04 (4), Stats., for the purpose of writing disability insurance. This is the statutory subsection under which commercial insurers writing the equivalent coverages of WPS' sickness care plans are licensed.
For almost 100 years the Wisconsin statutes have provided in effect that the State Society "is continued with the general powers of a corporation." Chapter 58, sec. 1431, Revised Statutes of Wisconsin, 1878; sec. 148.01 (1), Stats. 1971.
The existence of the State Society relates back to an act of the legislature when Wisconsin was still a territory. In 1841, the territorial legislature granted the State Society a charter which provided in part: "Said estate shall be applied exclusively for the promotion of medical science." Sec. 1, ch. 2, Bill 53, Laws of 1841. In 1849, the legislature said: "The medical society of the territory of Wisconsin is hereby continued." Ch. 27, Laws of 1849.
At the time of the territorial legislative act and continuing until 1897 (ch. 264, Laws of 1897) the regulation of the practice of medicine was to a significant extent delegated by the legislature to the State Society and county medical societies. These societies were authorized to examine students, grant diplomas and generally set standards for the practice of medicine. During this period of time the only statutes which dealt with prohibiting the practice of medicine by unauthorized persons were statutes which prohibited fees for medical testimony unless the witness had received a diploma from some incorporated medical society or college, and prohibiting one's holding *Page 51 
himself out as a doctor unless he had a diploma from an incorporated medical society or college or unless he was a member of the State Society or a county society legally organized in the state.
Even in more recent decades the legislature has continued to deal with the State Society specially and favorably.
Prior to 1935 the statute applicable to the State Society was substantially sec. 148.01, Stats., which provided:
 "148.01 State society. (1) The state medical society of Wisconsin is continued with the general powers of a corporation. It may from time to time adopt, alter and enforce constitution, by-laws and regulations for admission and expulsion of members, election of officers, and management.
 "(2) A member expelled from a county medical society may appeal to the state society, whose decision shall be final."
By ch. 350, Laws of 1935, a subsection (3) was added to sec.148.01. This subsection provided:
 "The state society, or a county society, in manner approved by the state society, may undertake and coordinate all sickness care of indigents and low income groups, through contracts with public officials, and with physicians and others, and by the use of contributions, co-operative funds and other means, provided only that free choice of physician within such contract shall be retained and that responsibility of physician to patient and all other contract and tort relationships with patients shall remain as though the dealings were direct between physician and patient." (Emphasis added.)
Chapter 494, Laws of 1945, amended sec. 148.01 (3) so that it read:
 "(3) (a) The state society, or a county society in manner approved by the state society, shall have the power to establish in the state or in any county or counties therein, a nonprofit plan or plans for the sickness care of indigents and low income groups, and others, through contracts with public officials, and with physicians and others, and by the use of contributions, cooperative funds, and other means, provided only that free choice of physicians within such contracts shall be retained and *Page 52 
that responsibility of physicians to patient and all other contract and tort relationships with patient shall remain as though the dealings were direct between physician and patient. Any person covered by or insured under such plan shall be free to choose for sickness care any medical or osteopathic physician licensed to practice in Wisconsin who has agreed to abide by such plan according to its terms and no such physician or osteopath shall be required to participate exclusively in any such plan.
 "(b) Such plan shall be exempt from the state insurance laws except those provisions relating to nondiscriminatory rates contained in section 201.53, investments contained in section 201.25 and premium reserves contained in section 201.18 (1).
 "(c) The society shall file with the commissioner of insurance a written declaration defining the organization and structure of the proposed sickness care plan and its area of operations and shall file any amendments or changes thereto. There shall also be filed with the commissioner specimen copies of all contracts with the insured and with the participating physicians and surgeons and the form of such contracts must be approved by the commissioner.
 "(d) The provisions of section 148.01 (3) (c) shall not apply to any plan nor to any revisions thereof in existence on July 26, 1945, nor to any contracts for the care of the indigent, nor shall any provision of chapter 148 be construed to apply to any corporation, association or organization not a body corporate under said chapter." (Emphasis added.)
Chapter 602, Laws of 1959, repealed sec. 148.01 (3) (b) to (d), renumbered sec. 148.01 (3) (a) to be 148.03 (1) and created sec.148.03 (2) to read as follows:
 "Such plans shall be governed by the provisions of s. 200.26 and by no other law relating to insurance unless such law is referred to in s. 200.26 and no law hereinafter (1959) enacted shall apply to such plans unless they are expressly designated therein or refer to such organizations as are responsible for the operation of such plans."
Also, in ch. 602, Laws of 1959, the legislature created sec.200.03 (18) and 200.26 which dealt with nonprofit service plans. In the *Page 53 
newly created section 200.26 (1) the word "organization" as used in this section is defined as meaning "any society, organization or corporation, operating a plan of sickness care as permitted by ch. 148 . . .; but when any such plan is operated by any division or agency of any such society, organization or corporation then the term `organization' means only such division or agency." Also in the then newly created sec. 200.26 (9) there was a provision that "In the event of dissolution of any such organization, the distribution of its assets shall be made as provided for in ch. 181."
Section 200.26 (9), Stats., providing for the dissolution of any such nonprofit service plan remained in the statutes until 1967 when by ch. 89, Laws of 1967, the legislature created ch. 645, the "Insurers Rehabilitation and Liquidation Act" which repealed sec. 200.26 (9) and the newly created sec. 645.02 (5) made nonprofit service plans, such as WPS, subject to ch. 645, Stats.
The State Society, however, claims that as a nonstock corporation it has all the general powers of a corporation as set forth in ch. 181, Stats. It asserts that secs. 181.04 (6) and (15), taken together, make it plain that the State Society has the power to organize another corporation and to hold its shares. Further authority for this is claimed to be found in sec. 181.49 (2), Stats., which deals with the right of a nonprofit corporation to sell, exchange, or otherwise dispose of all or substantially all of the property and assets of a corporation on such terms and conditions, and for such consideration as may be authorized. The State Society maintains that the language in sec. 148.03 (1), Stats., which empowers the State Society "to establish in the state . . . a nonprofit plan or plans for . . . sickness care . . ." is not really a limitation upon the State Society's corporate powers except insofar as it relates to any plan established by the State Society under that subsection, and then only to the effect that such a plan must be "nonprofit" and organized in the state. In other words, the State Society maintains that even without the existence of the enabling language in sec. 148.03 (1), Stats., it has, under its general corporate powers derived from sec. 148.01 (1), Stats., and ch. 181, Stats., the ability to organize another corporation, including a domestic stock insurance corporation under ch. 611, Stats.
That the legislature intended the State Society to have all the powers of a ch. 181 corporation is difficult to maintain in view of the *Page 54 
legislature's history of special legislation for the State Society. More specifically, what was the necessity of the legislature's providing, as it did in 1959, that "in the event of dissolution . . . the distribution of its assets shall be made as provided for in ch. 181" if the State Society was already governed by ch. 181 ? Ch. 602, Laws of 1959.
As set forth above, the legislature has gone to considerable effort to enact special laws dealing with the State Society and WPS, not only with respect to conferring power but also with specific exemption from insurance regulatory law.
Those who would enjoy the benefits that attend the corporate form of operation are obliged to conduct their affairs in accordance with the laws which authorize them. Village of BrownDeer v. Milwaukee (1962), 16 Wis.2d 206, 213, 114 N.W.2d 493.
The legislature has seen fit to treat "nonprofit plans" differently from other insurance corporations with respect to regulating their activities and operations. Corporate reorganization is merely one of the areas in which the legislature has treated these plans differently.
This is an area of public policy which is the domain of the legislature. If this corporation is to be permitted to make a major alteration in the character and scope of such a significant aspect of its operations, then this should be done only pursuant to specific legislative authority.
It is my opinion that the statutes under consideration do not contemplate that a "nonprofit plan" such as WPS is subject to the provisions of ch. 611, or more specifically, subject to the provisions dealing with corporate reorganization found in secs.611.71 through 611.78, Stats.
Therefore, it is my conclusion that you, as Commissioner of Insurance, may not lawfully permit WPS to be reorganized into a stock insurance company under ch. 611, Stats.
RWW:JEA *Page 55