SANITARY DISTRICT NO. 4 - TOWN OF BROOKFIELD,
Plaintiff-Appellant,†

UTILITY DISTRICT NO. 1 - TOWN OF BROOKFIELD,
Plaintiff,†

v.

CITY OF BROOKFIELD,
Defendant-Respondent.

Court of Appeals

*No. 2008AP511. Submitted on briefs December 2, 2008.
—Decided March 31, 2009.*

2009 WI App 47

(Also reported in 767 N.W.2d 316.)

† Petition to review denied 6/16/09.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James W. Hammes* of *Cramer, Multhauf & Hammes, LLP*, Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Julie M. Gay* of *Brenner, Wall & Gay, LLP*, Waukesha, and *George M. Schimmel* of *O'Neill, Schimmel, Quirk & Carroll, S.C.*, Milwaukee.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Sanitary District No. 4 – Town of Brookfield ("Sanitary District") appeals from a judgment entered in favor of the City of Brookfield ("City") following a trial to the court, wherein the court dismissed the Sanitary District's complaint challenging the June 6, 2006 annexation ordinance, annexing nine properties from the Town of Brookfield ("Town") to the City.[1] The Sanitary District makes two claims, which it contends renders the annexation ordinance invalid: (1) the City was the "real and controlling influence" in advancing the annexation petition, which violated the rule of reason governing these cases; and (2) the annexation petition was fatally defective because two limited liability property owners signed without written authorization from their respective limited

---

[1] The Sanitary Districts complaint also asserted a cause of action for implied breach of contract. The trial court's judgment dismissed that part of the complaint in the final judgment as well. This appeal does not challenge the trial court's decision on the contract cause of action, but focuses solely on the invalidity of the ordinance cause of action.

liability companies ("LLCs") and one limited liability property owner authorized an employee to sign the petition instead of having a member of the LLC sign.

¶ 2. The record reflects that the City did not apply undue influence and was not the real controlling influence in the creation of the petition boundaries or the advancement of the annexation petition involved here. The record further demonstrates that the members of the LLCs involved were in complete agreement in granting authorization to execute the annexation petition. Thus, voiding the annexation petition based on the defects alleged by the Sanitary District would exalt form over substance, run contrary to the more flexible business structure created by WIS. STAT. ch. 183 (2005–06),[2] and lead to an absurd result. Accordingly, for the reasons that follow, we affirm.

## BACKGROUND

¶ 3. In October 2002, Stan Johnson, a private citizen and property owner, sent a letter to the mayor of the City of Brookfield, indicating that some commercial property owners in the Town were interested in exploring the possible annexation of their properties to the City. The City responded by letter advising him that if he wanted to pursue the matter, he should contact the City Attorney or the Director of Community Development for the City.

¶ 4. On January 18, 2005, Johnson sent a similar letter to the City's mayor. On February 11, 2005, Dan Ertl, the Director of Community Development for the City responded. Ertl indicated that the City had undertaken a feasibility study following Johnson's 2002 in-

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

quiry and that Ertl or the city attorney would be "happy to outline the steps involved in preparing and submitting an annexation petition for City consideration." Sometime later in 2005, Johnson submitted a list of contiguous property owners interested in annexation. Johnson met with two representatives from the City and it was agreed that the City would draft the documents necessary to facilitate the annexation. Johnson would obtain the necessary signatures for the properties involved.

¶ 5. The trial court found that: "The City assisted Johnson by preparing several maps of the property proposed for annexation along with a properly formatted annexation petition." The record reflects that Robert Lemanczyk, who worked as a draftsman/engineering technician for the City, was asked to prepare a map and the legal description for the properties involved in the annexation. A petition based on this map was circulated by Johnson to the landowners. All of the landowners signed this annexation petition. Subsequently, an issue arose because the original map created a town island in violation of state law. Lemanczyk was asked to redraft the map to avoid the creation of a town island. After the redraft, the City was made aware that a two-acre portion of one of the properties involved had been or would be sold to the city of Pewaukee. As a result, Lemanczyk redrafted the map again to remove that portion from the annexation. A second annexation petition, with the corrected map attached, was given to Johnson on February 2, 2006. Johnson circulated the petition to the landowners who were seeking annexation and it was signed by all parties.

¶ 6. On April 4, 2006, Johnson filed the annexation petition with the City. On June 6, 2006, the City

adopted the annexation ordinance. The ordinance annexed the nine properties described in the petition to the City.

¶ 7. On August 9, 2006, the Sanitary District filed a declaratory judgment action against the City, seeking to invalidate the annexation ordinance. After discovery and reciprocal summary judgment motions, the matter was tried to the court. The trial court issued a decision upholding the annexation ordinance on December 18, 2007, ruling:

> The testimony at hearing did not reveal any property owners having disagreed with the petition and that the petition along with the appropriate map was circulated together.
>
> There is no record that one — any property owner was improperly influenced or somehow coerced by the City or its officials, two, any evidence that the City or its officials conspired with anyone to include Mr. Johnson or amongst themselves to secure annexation of the properties.
>
> Instead, the impetus for the annexation came from Mr. Johnson himself along, as a result of his discussions, with the abutting property owners that were part of the petition.
>
> Each who testified in the hearing had their own reasons for joining or in one case not joining the annexation petition.
>
> While the burden of proof required of the District is high, there is no fact to be found nor any reasonable inference that can be drawn that would permit this Court to conclude the City acted improperly.
>
> Therefore, the District's request to invalidate the ordinance is denied.

Judgment was entered. The Sanitary District now appeals.

## DISCUSSION

### I. Standard of Review.

■■

¶ 8. Our review in this matter involves mixed questions of law and fact. *See Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 190, 488 N.W.2d 104 (Ct. App. 1992). The trial court's factual findings will be upheld unless clearly erroneous. *Id.* Applying established facts to the legal standards governing annexation, however, presents issues of law we review independently. *Id.*

### II. Was the City the Real Controlling Influence?

¶ 9. The Sanitary District's first basis for invalidating the annexation ordinance is that the City was the real controlling influence behind its adoption and therefore the ordinance violates the rule of reason. We cannot agree.

■■

¶ 10. The rule of reason is a judicially created doctrine pertinent to annexation cases. *See Town of Pleasant Prairie v. City of Kenosha*, 75 Wis. 2d 322, 325, 249 N.W.2d 581 (1977). In order to conform to the rule of reason, the annexation must meet three requirements: "(1) exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) some reasonable present or demonstrable future need for the annexed property must be shown; and (3) no other factors must exist which would constitute an abuse of

discretion on the part of the municipality." *Town of Menasha*, 170 Wis. 2d at 189. Here, the Sanitary District does not challenge requirement (2). Rather, it argues only that the City's controlling influence created arbitrary boundaries under requirement (1) and constituted an improper factor under requirement (3), resulting in an abuse of discretion on the part of the City.

¶ 11. In reviewing this ordinance, we presume that it is valid "and the burden of proving the ordinance arbitrary and capricious . . . rests with the party so claiming." *Id.* Thus, the burden of proof rests with the Sanitary District. Based on our review, the Sanitary District has failed to satisfy its burden.

¶ 12. The Sanitary District asserts that the City was the real and controlling influence in determining the annexation boundaries and the City's participation in preparing the legal documents and making unilateral changes to the map demonstrate that the City, rather than the property owners, was the dominating and controlling force driving the annexation petition. The trial court found otherwise. The record supports the trial court's determination. Therefore, we affirm.

¶ 13. The evidence in the record is undisputed that Johnson initiated contact with the City *on his own* to request annexation. He testified that he personally talked to surrounding property owners about annexation. Johnson created *on his own* the original petition signature form. He testified that: "these property owners are all near or nearly adjacent to my property, and I simply walked over and said are you interested in signing a request for annexation. And that was all that was to it." Johnson testified at trial and submitted an affidavit stating that the City was not inducing him to

seek annexation nor was it promising him anything for initiating the annexation. Each of the other property owners, who signed the annexation petition, also submitted affidavits averring that they signed the annexation petition; that they did so because they believed annexation to be in their best interest; and that they had not been contacted or influenced by the City.

¶ 14. The Sanitary District focuses on the involvement of the City with respect to assisting Johnson in creating legal descriptions of the property and making revisions to the map. It argues that these actions exhibit the City's control of and advancement of the annexation petition, showing that the City dominated and unduly influenced the property owners. We cannot agree.

¶ 15. The facts in this case clearly show that the City's actions merely facilitated and assisted the property owners' intentions and desires. The City helped the property owners accomplish what they had independently initiated. This was not a situation where the City "dominated the petitioners," *see id.* at 193, where the City was a petitioner itself or excluded certain landowners to ensure the success of the petition, *see id.* at 191, or where the City acted as a "puppeteer" controlling the property owners with a "municipal string," *see Town v. Waukesha v. City of Waukesha*, 58 Wis. 2d 525, 530, 206 N.W.2d 585 (1973).

¶ 16. The City did offer its assistance by providing relevant information, meeting with Johnson, drafting legal descriptions of the property and creating and amending the maps necessary to attach to the annexation petition. However, all of the City's conduct was done in response to the initial contact with property owner Johnson and in response to his representation that a group of property owners were interested in

annexing to the City. All of the City's conduct was done to effect the annexation requested by the property owners. At no time did the City attempt to contact the property owners individually to exert undue influence. In fact, the only property owner the City ever talked to was Johnson, who had initiated the contact. At no time did the City attempt to solicit additional property owners to those already involved. The property owners on the list remained the same throughout the process. Both the first and the second annexation petition were unanimously agreed to and advanced by the property owners involved.

¶ 17. Further, although the City created the initial map and then revised it twice, the revisions did not alter the land, which the petition sought to annex. Rather, the first revision was necessary to avoid the creation of a town island, which is contrary to Wis. Stat. § 66.0221. The change did not alter the land to be annexed, but rather removed a portion of a public right-of-way adjacent to one of the properties. The change did not affect the owner's property. This first map amendment was clearly and undeniably not an attempt by the City to influence the boundary of the property to be annexed.

¶ 18. The second amendment was necessary due to the transfer of a two-acre parcel of the property involved to the City of Pewaukee. The Sanitary District argues that the City made the change to the map without consulting Johnson or the property owner whose land was involved, Peter Gumina. The Sanitary District argues that this unilateral change showed that the City was the controlling force behind the annexation petition. The City refutes the Sanitary District's argument pointing out that it only amended the map because it discovered that the owner was selling or had

sold the two-acre parcel and also that there is no evidence in the record to prove Gumina disapproved of the revision. Further, when Gumina signed the petition for annexation with the final version of the map attached, his action constituted approval of the removal of the two-acre parcel.[3]

¶ 19. Based on the foregoing, we reject the Sanitary District's argument. The City's actions consistently demonstrated its attempt to configure the annexation map in order to accomplish the intent of the owners. Although the final amendment appeared to be unilaterally made by the City, the amendment accomplished the intent of the property owner: to have the land he owned annexed to the City. There was no evidence suggesting that the City removed the two-acre parcel for its own benefit or because its actions initiated the sale of Gumina's property to the city of Pewaukee. Rather, the evidence shows that the City discovered the potential sale of this two-acre parcel and amended the map to reflect that development in order to accomplish the annexation requested by the property owners.

¶ 20. Citing *Town of Menasha*, the Sanitary District argues that the City's assistance here, in amending the annexation map, went beyond "providing mere technical assistance or recommendations" and constituted an improper controlling influence. *See id.*, 170 Wis. 2d at 192–93. We cannot agree with the Sanitary District's characterization that the actions of the City operated as a "controlling influence." *Town of Menasha* is easily distinguishable from the instant case. In *Town of Menasha*, we affirmed the trial court's determination

---

[3] The Sanitary District argues that the petition was signed without the final map attached to it. The trial court found otherwise and there is testimony in the record to support the trial court's finding. Thus, the finding is not clearly erroneous.

that the city of Menasha was the controlling influence in creating the boundaries of the annexation where three property owners sought annexation and the city created a map adding a fourth property owner, who objected to the annexation. *Id.* at 186. In *Town of Menasha*, the city of Menasha did not comply with the intent of the three property owners seeking annexation of only their three properties. *Id.* at 192. Rather, the city of Menasha created a map, which added a fourth property with a commercial mall on it, whose owner was not interested in annexing. *Id.* at 186. The trial court severed the fourth property from the annexation and allowed the annexation of the three consenting property owners. *Id.*

¶ 21. The City's actions in the instant case were always consistent with, and in furtherance of, the property owner's expressed desire. The property owners initiated the annexation proceeding and were assisted by the City to accomplish that intent. Accordingly, we reject the Sanitary District's contention that the City controlled the boundaries or exerted undue influence so as to operate as the controlling influence. The annexation petition here, as a result, conforms to the rule of reason.

### III. Was the Annexation Petition Fatally Defective Based on Improper Signatures?

¶ 22. The Sanitary District claims the annexation petition was fatally defective because of two defects related to signatures. First, it contends that the individuals who signed on behalf of two of the LLCs did so without written authorization from the LLCs. Second,

it contends that the members of one LLC improperly authorized an employee to sign the petition. We reject both arguments.

*A. No Written Authorization*

¶ 23. The Sanitary District asserts that two of the LLC property owners, who signed the annexation petition, did so without written authorization from the LLC. Therefore, the Sanitary District claims the signatures are invalid, rendering the annexation petition fatally defective. In making this argument, the Sanitary District acknowledges there are no Wisconsin cases directly on point. It asserts that the decision in *Village of Brown Deer v. City of Milwaukee*, 16 Wis. 2d 206, 114 N.W.2d 493 (1962), holding that the president of a corporation signing an annexation petition without the authorization of the board of directors, *see id.* at 212–15, should be analogized to the LLCs in the instant case.

¶ 24. In *Village of Brown Deer*, our supreme court held that the signature of the president of a corporation in support of annexation was invalid because the president did not have the formal or informal authorization from the 11–member board of directors. *Id.* at 212–15. The decision was based on the language of WIS. STAT. § 180.91 (1955), which provided that a corporation could take action without a formal meeting " 'if a consent in writing setting forth the action so taken" was "signed by all of the shareholders, subscribers, directors, or members.' " *Village of Brown Deer*, 16 Wis. 2d at 213. It was undisputed in *Village of Brown Deer* that the president signed the annexation petition without conducting a formal meeting and without obtaining the written consent of all the board members. *Id.* at 212.

¶ 25. We hold that *Village of Brown Deer* does not apply here. First, the *Village of Brown Deer* case applies to corporations organized under Wɪs. Sᴛᴀᴛ. ch. 180, whereas the case at hand involves LLCs organized under Wɪs. Sᴛᴀᴛ. ch. 183, which was created to provide a much more flexible business structure. Chapter 183 did not even exist at the time *Village of Brown Deer* was decided.

¶ 26. Second, the facts in the instant case are distinguishable from those in *Village of Brown Deer*. In *Village of Brown Deer*, the individual signing the annexation petition did not have authorization from the board of directors and the signature violated the statute requiring written authorization. *Id.* at 212–15. In contrast, both LLC signatories here had authorization from the LLC to sign the petition and there is no statute requiring written authorization.

¶ 27. The two LLCs involved here were Leopold/Trainor Co., LLC and Schecterle Commercial Holdings, LLC.[4] Jeff Wozniak, who signed the annexation petition on behalf of Leopold/Trainor, filed answers to interrogatories swearing under oath that the board of directors met and discussed whether to sign the annexation petition. Wozniak stated that the board of directors unanimously agreed and consented to annex to the City, giving Wozniak full authority to sign on behalf of the LLC.

---

[4] There was some confusion in the trial court as to whether the proper name of this entity was Schecterle Commercial Properties 3, LLC or Schecterle Commercial Properties. Both are owned by the same members/owners and there is no confusion as to the property involved. Accordingly, there is no need for us to address the name difference and we refer to the LLC as Schecterle Commercial throughout this opinion.

¶ 28. Similarly, Brian Schecterle, who signed the annexation petition on behalf of Schecterle Commercial, stated in sworn answers to interrogatories that he and his wife Renee are the sole members/owners of the LLC. Brian is the managing member. He indicated that before signing the annexation petition, he and Renee met and discussed the topic and agreed it would be in the best interest of the LLC to annex to the City. Thus, Schecterle was authorized to sign on behalf of the LLC.

¶ 29. The Sanitary District cannot cite a WIS. STAT. ch. 183 corollary to WIS. STAT. § 180.91 (1955) because there is none. Instead, it makes its argument based on § 183.0401(1), which contains a provision placing management of the LLC with the members "subject to any provision in an operating agreement or this chapter restricting or enlarging the management rights and duties of any member or group of members." The Sanitary District then argues that the operating agreements of the LLCs, Leopold/Trainor and Schecterle Commercial, require the LLC members to gather for a meeting before the decision on annexation occurs *and* a written record of the decision must be generated and kept by the LLC.

¶ 30. The record contains the operating agreement from both LLCs. Leopold/Trainor's operating agreement states in pertinent part: "the consent of the Members to any act . . . may be given by Majority Consent at a meeting at which a quorum . . . participate[s] in person or by telephone or other electronic means. Alternatively, the Members may act by unanimous written consent without the need for a meeting." The undisputed facts demonstrate that the written consent option was not used for the annexation decision. Rather, the Leopold/Trainor board met and unani-

mously verbally consented. Thus, there was no violation of this provision of the operating agreement.

¶ 31. The Sanitary District's argument that the consent had to be in writing comes from the operating agreement's "Records" provision, which states that: "The Company shall keep written records of all actions taken by the Members." The Sanitary District attempts to blur the distinction between a written *consent* and a written *record*. A written consent is required only in the absence of a meeting. Because a meeting occurred and the members verbally agreed to execute the annexation petition, no written consent was necessary. The action provision of the operating agreement requires only one or the other—either a meeting with a verbal agreement or written consent.

¶ 32. Although Leopold/Trainor admits it "did not execute a 'written consent' authorizing execution of the petition," it is not clear whether a written record has been created documenting its action. Even assuming that Leopold/Trainor failed to comply with the records provision, we cannot conclude that Wozniak's signature on the petition created a defect invalidating the petition. The record demonstrates that Wozniak was authorized to sign the annexation petition, that Leopold/Trainor's decision to join in the annexation petition was unanimous and therefore, any technical defect with respect to the records provision does not operate to invalidate the annexation petition. The LLC substantially complied with the operating agreement and expressly authorized the execution of the annexation petition.

¶ 33. Schecterle Commercial's operating agreement provides: "Actions and decision requiring an Affirmative Vote may be authorized or made either by vote . . . taken at a meeting . . . or by written con-

sent . . . without a meeting." Here, the record reflects that the members of Schecterle Commercial met and decided that joining the annexation petition would be in the best interest of the LLC. Again, the operating agreement provides two disjunctive methods when taking action: verbal consent at a meeting *or* written consent without a meeting. Here, verbal consent at a meeting occurred; thus, written consent was not required.

¶ 34. Like Leopold/Trainor, Schecterle Commercial's operating agreement also had a "Records" provision, stating: "The Company shall keep written records of all actions taken and votes made by the Members, which records shall be kept and maintained by the Managing Members." The same analysis applied to Leopold/Trainor above applies to Schecterle Commercial. No written consent was required by the operating agreement because Schecterle Commercial's members/owners met and verbally decided to act. Even if we assume that Schecterle Commercial did not create a written record regarding the verbal decision to sign the annexation petition, this failure does not violate the action provision of the agreement. Rather, any absence of a written record falls under the Records provision of the agreement. Invalidating the petition on this basis would exalt form over substance and lead to an absurd result. It is clear that the members of Schecterle Commercial unanimously and expressly authorized the execution of the annexation petition.

¶ 35. Finally, WIS. STAT. ch. 183, unlike WIS. STAT. ch. 180, does not contain a requirement that approval or consent of members to undertake an action be reduced to written form. Rather, it requires "an affirmative vote, approval or consent to decide any matter

connected with the business of a [LLC]." *See* Wis. Stat. § 183.0404(1). Affirmative vote, approval and consent occurred in both Leopold/Trainor's and Schecterle Commercial's decisions to authorize Wozniak and Schecterle to execute the annexation petition. Thus, the signatures here did not violate the governing statutory framework as did the signature in *Village of Brown Deer*. Accordingly, we reject the Sanitary District's argument that the signatures in this case were fatally defective.

*B. Employee Signature*

¶ 36. The third LLC involved is On Belay, LLC. The Sanitary District argues that the annexation petition was invalid because an employee of On Belay, Eric Olson, signed the petition instead of an actual member of the LLC. The Sanitary District argues, without citation to authority, that members of an LLC "cannot delegate to an employee the authority to sign an annexation petition." In response, the City advises the court that the record contains sworn discovery responses signed by On Belay member, Kenneth L. Chmielewski, stating that the decision to sign the annexation petition was made by the members/owners of On Belay and there was an affirmative voice, approval and consent to do so. The members of On Belay authorized Olson to sign the petition on their behalf.

¶ 37. The record is clear that On Belay expressly decided that it would be in the best interest of the LLC to annex to the City. The question is whether having its employee, Olson, sign the annexation petition somehow invalidated its express authorization. We hold that under the facts presented here, Olson's signature did not invalidate the petition. We base our decision, in

550

part, on the holding in *Town of Mt. Pleasant v. City of Racine*, 28 Wis. 2d 519, 137 N.W.2d 656 (1965). In that case, the corporation adopted a resolution authorizing the president and secretary to jointly sign annexation documents on behalf of the corporation. *See id.* at 522. However, only the secretary signed the annexation papers. *Id.* It was undisputed that the board of directors had authorized and consented to the annexation. *Id.* at 523. The court held that under these facts, the failure to have the president also sign the annexation papers was not a fatal defect and "should not operate to vitiate the petition since the signing was merely a ministerial act to be done pursuant to the actual pre-existing authorization." *Id.*

¶ 38. The same principles in *Town of Mt. Pleasant* apply here. The members of On Belay authorized the signing of the annexation petition. They decided their employee, Olson, could sign the petition on their behalf as an authorized agent. There is nothing in the operating agreement of On Belay that prohibits the LLC members from delegating the responsibility for signing the annexation petition to Olson. The signing was a ministerial act done in compliance with the LLC members' actual authorization. Accordingly, Olson's signature does not vitiate the validity of the annexation petition.

¶ 39. The Sanitary District attempts to use WIS. STAT. § 183.0702 in support of its contention that a member's signature, rather than an employee's signature, was needed to validly execute the annexation petition. Section 183.0702 places the authority to transfer property of a LLC with managing members of the LLC. We reject this argument for two reasons. First, as noted above by case law, executing annexation documents when a pre-existing authorization exists is a

ministerial act. Having a designate sign with the organization's express permission under "pre-existing authorization" circumstances does not invalidate an annexation petition. Second, § 183.0702 contemplates the transfer of title of an asset owned by an LLC. It does not pertain to whether the LLC itself is located in a specific place, such as in the Town of Brookfield or the City of Brookfield. Accordingly, the statute does not apply to the facts in this case.

## CONCLUSION

¶ 40. We conclude that: (1) the Sanitary District has failed to satisfy its burden of proving that the City was the controlling influence with respect to the annexation ordinance at issue; (2) the Sanitary District failed to establish that the annexation ordinance violated the rule of reason; (3) the record reflects the LLC signatories that signed the annexation petition did so with unanimous authorization of their membership in substantial compliance with their operating agreements; and (4) the execution of the annexation petition by the LLCs' signatories complied with the pertinent law and therefore the Sanitary District's argument that the signatures were fatally defective is without merit. Accordingly, we affirm the decision of the trial court, which rejected the Sanitary District's request for a declaration invalidating the annexation petition.

*By the Court.*—Judgment affirmed.