TOWN OF PLEASANT PRAIRIE, Appellant, v. CITY OF KENOSHA, Respondent.

*No. 75-66. Argued November 5, 1976.—Decided January 18, 1977.*
(Also reported in 249 N. W. 2d 581.)

For the appellant there were briefs by *Robert E. Hankel, Schoone, McManus & Hanson, S. C.* and oral argument by *Mr. Hankel,* all of Racine.

For the respondent the cause was argued by *Michael J. McCauley,* assistant city attorney, with whom on the brief was *James W. Conway,* city attorney.

ABRAHAMSON, J. This is an appeal in a declaratory judgment action brought by the Town of Pleasant Prairie. The issue presented is whether annexation by the City of Kenosha of certain land in the Town of Pleasant Prairie violated the rule of reason established in decisions of this court to test the validity of municipal annexations. We conclude that the annexation is valid.

## I.

On September 4, 1973, Robert E. and Doris P. Gangler filed with the Kenosha city clerk a petition seeking direct annexation by the City of a 28 acre parcel of land, roughly rectangular in shape, then located in the Town of Pleasant Prairie. On the following day the Ganglers petitioned the City to rezone most of the proposed annexation for industrial use.

Along its northern boundary the parcel described in the annexation petition was contiguous to existing city limits, which in this region coincided with the northern boundary of a railroad right-of-way owned by the Chicago & Northwestern Railroad. The proposed annexed territory included 2.9 acres of right-of-way owned by the railroad, 2.6 acres owned by Mr. William Kaphengst, 7.7 acres owned by Mr. Timothy Lawler, and 14.8 acres owned by the Ganglers. No electors lived within this territory. Only the Ganglers, who owned more than half of the land in area, signed the annexation petition.[1]

---

[1] Sec. 66.021(2)(a), Stats., provides:

"(a) *Direct annexation.* A petition for direct annexation may be filed with the city or village clerk signed by:

An ordinance annexing the territory was approved by the Common Council of the City of Kenosha on October 1, 1973. At the same meeting, the Council referred the zoning petition to the City Plan Commission for reconsideration. Three days later the Town of Pleasant Prairie filed the complaint by which the action now before the court was commenced. The action proceeded to trial in the circuit court in November of 1974, and the Town has taken this appeal from a judgment upholding the validity of the annexation.[2]

The Town does not dispute that as a matter of procedure the annexation was accomplished in full compliance with the statutes. The claims made are (1) that in several ways matters respecting industrial zoning for the annexed land so infected the annexation as to render it arbitrary, capricious and an abuse of discretion; (2) that the City had no reasonable need for the territory annexed; and (3) that the boundaries of the territory were arbitrarily and capriciously fixed.

## II.

■■ In ch. 66, Stats., the legislature has conferred upon cities and villages broad powers to annex unincorporated territory. This court has often stated that in determining the validity of annexations it is committed to the

"1. A majority of the electors residing in such territory and either a. the owners of one-half of the land in area within such territory, or b. the owners of one-half of the real property in assessed value within such territory; or

"2. If no electors reside in such territory, by a. the owners of one-half of the land in area within such territory, or b. the owners of one-half of the real property in assessed value within such territory."

[2] This is the second time the instant case has been before this court. In *Town of Pleasant Prairie v. City of Kenosha*, 67 Wis.2d 1, 226 N.W.2d 210 (1975), we affirmed an order of the trial court dissolving a temporary injunction restraining the City from enacting an ordinance to change the zoning of the annexed territory pending final determination of the case.

doctrine which has come to be known as the "rule of reason." We have stated the rule of reason, which has as its essential purpose the ascertainment whether the power delegated to the cities and villages has been abused in a given case, in the following terms:

"Under this rule, (1) exclusions and irregularities in boundary lines must not be the result of arbitrariness, (2) some reasonable present or demonstrable future need for the annexed property must be shown, and (3) no other factors must exist which would constitute an abuse of discretion."[3]

When attacked under the rule of reason, annexation ordinances, like legislative enactments in general, enjoy a presumption of validity, and the burden of overcoming this presumption with proof that the ordinance is invalid rests on the party so claiming. *Town of Lafayette v. City of Chippewa Falls*, 70 Wis.2d 610, 618, 235 N.W.2d 435 (1975); *Town of Waukechon v. City of Shawano*, 53 Wis.2d 593, 596, 193 N.W.2d 661 (1972); *Town of Mt. Pleasant v. City of Racine*, 28 Wis.2d 519, 525, 526, 137 N.W.2d 656 (1965). The rule of reason does not authorize a court to inquire into the wisdom of the annexation before it or to determine whether the annexation is in the best interest of the parties to the proceeding or of the public. These matters are inherently legislative and not judicial in character. *Town of Waukechon v. City of Shawano, supra*, 53 Wis.2d at 598–599; *In re City of Beloit*, 37 Wis.2d 637, 644, 155 N.W.2d 633 (1968). As we said in *Town of Brookfield v. City of Brookfield*, 274 Wis. 638, 646, 80 N.W.2d 800 (1957):

"In annexation proceedings the city council in the first instance determines the suitability or adaptability

---

[3] *Town of Lafayette v. City of Chippewa Falls*, 70 Wis.2d 610, 624, 625, 235 N.W.2d 435 (1975). *See also: Town of Germantown v. Village of Germantown*, 70 Wis.2d 704, 235 N.W.2d 486 (1975); *Town of Waukesha v. City of Waukesha*, 58 Wis.2d 525, 529, 206 N.W.2d 585 (1973); *Town of Lyons v. City of Lake Geneva*, 56 Wis.2d 331, 337, 202 N.W.2d 228 (1972).

of the area proposed to be annexed and the necessity of annexing the same for the proper growth and development of the city. Upon review the courts cannot disturb the council's determination unless it appears that it is arbitrary and capricious or an abuse of discretion."

## III.

The Town advances several arguments related to zoning which it claims show the annexation herein to be invalid. It is first claimed that annexation was improperly used for the sole purpose of effecting rezoning of the land involved.

The evidence showed that the Ganglers' chief motive for seeking annexation was to enable industrial development of their property, which was zoned for agricultural use while located in the Town under zoning ordinances of Kenosha county. The Ganglers had approached John Maurer, Town Chairman of Pleasant Prairie, concerning the possibility of industrial development of their land. At the trial Robert Gangler testified that Maurer had told him that he considered the Gangler land to be good industrial property, but that the Town could not then provide it with sewer and water services. Maurer himself testified in substance that he had simply told Gangler that the land was not and would not be zoned for industrial development. In any event, the record shows that the Ganglers desired industrial development for their land before annexation to the City was sought and that neither the zoning nor the municipal services that would be necessary to such development were then available in the Town.

When it appeared that their plans for development could not be realized in the Town, the Ganglers initiated contact with Robert F. Kolstad, City Planner for the City of Kenosha, regarding the possibility of annexing their land to the City. Several meetings were had at which Kolstad explained statutory annexation procedures and advised and assisted the Ganglers in pre-

paring the necessary documents and maps. As stated above, on September 4, 1973, the Ganglers' annexation petition was filed and by letter dated September 5, 1973, Mr. Gangler petitioned the Kenosha Common Council to have most of the annexation rezoned for heavy industrial use. Gangler's letter stated that "the purpose of annexation and rezoning is to permit the development of this property for industrial purposes," and for this reason he requested that the annexation and zoning petitions be considered together. Such joint consideration was in fact undertaken. At its October 1, 1973, meeting the Kenosha Common Council adopted the annexation ordinance and voted to refer the matter of zoning for the annexed area "back to City Plan Commission for reconsideration—to eliminate all heavy industrial zoning and to provide for a proper buffer zone between the industrial and residential areas."

We find nothing in this state of affairs which would justify invalidating the annexation now before the court. The Town's assertion that the sole purpose behind the annexation was to obtain a change in zoning is misleading. The Ganglers' purpose was to develop their land, preferably for industrial use, which required zoning and municipal services not available in the Town. It cannot be doubted that a purpose to develop one's land is legitimate, and this court has stated that property owners may seek annexation in pursuit of their own perceived best interests. *Town of Lafayette v. City of Chippewa Falls,* 70 Wis.2d 610, 629, 630, 235 N.W.2d 435 (1975); *Town of Waukesha v. City of Waukesha,* 58 Wis.2d 525, 530, 206 N.W.2d 585 (1973). Cf. *Town of Madison v. City of Madison,* 12 Wis.2d 100, 106 N.W.2d 264 (1960), in which the court recognized that removal of the burden of town zoning ordinances on property in the town owned by the City of Madison was a legitimate goal of the annexation proceeding. We hold that a direct annexation not otherwise in conflict with the rule of reason is not

invalidated because the petitioners are motivated by a desire to obtain a change in the zoning of their land.

Nor is this annexation condemned by the existence of a desire or intent to rezone the property on the part of the City of Kenosha. The City sought to justify this annexation by showing that it had a need for land with potential for industrial development. As discussed later, we conclude that a reasonable need for such land was shown to exist. It would be manifestly unreasonable then to say that the annexation is invalidated because of an intent to rezone the land so as to allow it to serve the very need the annexation was designed to fulfill.

The Town next claims that the ordinance is invalid because the City used the economic benefits of rezoning to induce the Ganglers to petition for annexation and because the City in effect delegated its zoning power to the Ganglers. Running through both of these arguments is the Town's assertion that use of the annexed territory for industrial development represents poor urban planning.

This court considered the matter of improper inducement of annexation in *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis.2d 533, 126 N.W.2d 201 (1964). In that case the City, in connection with the acquisition of options to purchase some of the subsequently annexed land, obtained an oral agreement with the vendor that he would obtain the signatures of his tenants, as electors, on the annexation petition. The City obtained two other signatures in exchange for one year of rent-free occupancy in one of the buildings it owned, and it secured another two signatures by threatening to evict two of its tenants unless they signed. The court held this activity improper. The signing of an annexation petition was analogized to voting; the signing must be the elector's individual act in discharge of the elector's duty in shaping the affairs of government. Signatures could not be bought as articles of commerce. *Id.* at 539, 540. The court went on to say:

"No property owner, city, or individual, possesses any right to induce by contract or threat an elector to vote a particular way or to sign an annexation petition because of special economic consideration unrelated to the political issue involved. This is not to say one cannot persuade an elector to vote in favor of his general interest in the outcome of a political issue . . . . [P]reexisting self-interest is a legitimate motivation for one's act." *Id.*, at 540.

In *Town of Lafayette v. City of Chippewa Falls, supra,* the claim was made that annexation by the City of the state-owned Northern Colony and Training School was invalid because the City had concededly undertaken a "sell job" to encourage the State to petition. This claim was rejected:

"Nevertheless, State officials testified that the city at no time threatened to withdraw services to the colony [which services had been provided for some time under contract] and in no other way pressured the State into petitioning for annexation. It was the State, not the city, that petitioned for annexation based upon reasons advantageous to it." *Id.* at 631.

The *Fond du Lac* and *Lafayette Cases* are dispositive of the Town's argument here. The record in this case shows without contradiction that the Ganglers desired annexation by reason of their own self-interest, and that the Ganglers, not the City, initiated the annexation process and made the decision to seek rezoning. Kolstad testified that simultaneous petitioning for annexation and rezoning is a common practice. There is no suggestion in this record that any coercion was practiced upon the Ganglers by the City or that any special economic considerations of the type involved in the *Fond du Lac Case* were given or promised to the Ganglers.

■ We decline the Town's suggestion that we infer from the facts that some kind of promise of industrial zoning was made by the City, that industrial zoning was used as a "bribe" to induce the Ganglers to petition for annexa-

tion, or that the City somehow "delegated" its zoning powers to the Ganglers.

It may be that the City Planner informed the Ganglers that he personally felt industrial zoning would be appropriate for the annexed area or that he thought the Common Council would probably approve such zoning. However, there is no evidence to show that anyone acting on behalf of the City promised any type of rezoning or otherwise purported to commit the City in this regard. Moreover, as we have noted, the Common Council has already partially refused Mr. Gangler's rezoning petition, which requested that the property be rezoned for heavy industrial use. Speculative characterizations such as the Town has advanced cannot serve to overcome the presumed validity of the annexation ordinance here.

The expert testimony and documentary evidence adduced with respect to the alleged impropriety, from the standpoint of sound land use, management and urban planning, of developing the annexed territory for industrial use do not, as the Town contends, establish the Town's assertions of arbitrary economic inducement and invalid delegation of zoning power. The area immediately to the north of the annexation is already industrial, while a residential subdivision is located southeast of the annexation, and nearby lands in other directions are for the most part undeveloped. Without describing the evidence in detail, which would serve no useful purpose, it suffices to say that the conflict between the parties came down to this: The Town took the position that industrial activity should be confined to the area north of the Chicago & Northwestern Railroad tracks—i.e., to the area which is already industrial—with the area south of the tracks, including the annexation here, to be used ultimately for residential development. The railroad tracks would provide a buffer zone between the industrial and residential areas. The City asserted that the railroad was not a good buffer and that light industrial activity should

extend south of the railroad tracks with the needed buffer to be provided by a wide boulevard coupled with setback requirements. Both parties produced expert testimony and studies to support their positions.

█ Under the circumstances we believe the trial court was correct in declining to involve itself in weighing the relative merits of the parties' positions respecting industrial development of the annexed territory. In essence this phase of the trial was an attempt to litigate in court the question of what zoning was best for the territory affected. As was said in *Buhler v. Racine County,* 33 Wis.2d 137, 146, 147, 146 N.W.2d 403 (1966) :

"[S]ince zoning is a legislative function, judicial review is limited and judicial interference restricted to cases of abuse of discretion, excess of power, or error of law. Consequently, although a court may differ with the wisdom, or lack thereof, or the desirability of the zoning, the court, because of the fundamental nature of its power, cannot substitute its judgment for that of the zoning authority in the absence of statutory authorization. This rule applies not only to the necessity and extent of zoning but also to rezoning, classification, establishment of districts, boundaries, uses, and to the determination of whether or not there has been such a change of conditions as to warrant rezoning."

In *In re City of Beloit,* 37 Wis.2d 637, 155 N.W.2d 633 (1968), we held unconstitutional an attempt by the legislature to delegate to the courts determination of whether an annexation was "in the public interest."

█ It is for the Common Council of the City of Kenosha to weigh competing data and theories bearing on what zoning is best for the area in which this annexation is located. It cannot be said that industrial development of the annexation here would be arbitrary, capricious or an abuse of discretion, and this being so, judicial inquiry on this issue is at an end. *Town of Brookfield v. City of Brookfield, supra,* 274 Wis. at 646.

## IV.

The rule of reason requires that the annexing municipality have some reasonable present or demonstrable future need for the annexed territory. *Town of Waukesha v. City of Waukesha, supra,* 58 Wis.2d at 533. As a corollary to this requirement, it is necessary that the territory annexed be "reasonably suitable or adaptable to city or village uses or needs." *See Town of Wilson v. City of Sheboygan,* 230 Wis. 483, 495, 283 N.W. 312 (1939); *Town of Greenfield v. City of Milwaukee,* 273 Wis. 484, 487, 78 N.W.2d 909 (1956); *Town of Brookfield, supra,* 274 Wis. at 646.

The trial court entered the following findings of fact:

"8. There is no evidence that Mr. William Kaphengst objects to the proposed annexation.

"9. Mr. Timothy Lawler objected to the annexation at trial, but his prior statements show that his objections would be removed if certain conditions were met regarding improvement of the area.

". . .

"15. The annexed land is suitable for industrial development.

"16. The annexed land is homogeneous with the contiguous land in the City of Kenosha in that it is contiguous to industrial land, near an industrial highway and adjacent to a railroad track.

"17. The boundaries of the annexed land were determined by the petitioners, Robert E. Gangler and Doris P. Gangler.

"18. There is no surplus of land available for industrial use in the City of Kenosha.

"19. There is a need for land with potential use for industrial development in the City of Kenosha.

"20. The City of Kenosha's supply of available and suitable land for industrial development will last for approximately 13 years.

"21. Much of the land available for industrial development in the City of Kenosha is encumbered by private restrictions on development.

"22. The only sewer and water system available for servicing the annexed area is that system operated by the City of Kenosha, which system's facilities are within 100 feet of the annexed land.

"23. The Town of Pleasant Prairie has no water or sewerage facilities which could serve the annexed area."

The Town contends that these findings are unsupported by the record. We disagree. The trial court's findings of fact are not contrary to the great weight and clear preponderance of the evidence and must therefore be sustained on this appeal. *City of Beloit v. Town of Beloit,* 47 Wis.2d 377, 388, 389, 177 N.W.2d 361 (1970) ; *Town of Waukesha v. City of Waukesha, supra,* 58 Wis.2d at 533, 534.

To sustain the validity of an annexation the annexing municipality need not have a pressing, imperative need for the territory. A showing of a reasonable need for the annexation will be sufficient to sustain annexation. As we said in *City of Beloit v. Town of Beloit, supra,* at page 385 :

"The question before the trial court in this case was whether the respondents had overcome the presumed validity of the ordinance and proved the proposed annexation arbitrary and capricious. . . . [T]his required a showing that there was no reasonable need for the annexation. If appellant has shown *any* such reasonable need for annexation, further discussion of necessity requires weighing these facts and determining what is in the best interest of the parties. This is not a judicial function."

*See also Town of Waukechon, supra,* 53 Wis.2d at 598, 599; *Town of Lafayette, supra,* 70 Wis.2d at 626.

Among the factors this court has recognized as being relevant on the question of need are the necessity for reasonable and orderly plans for municipal development (*Town of Brookfield, supra,* 274 Wis. at 645) ; an increase in population and the existence of growth over-

flowing existing boundaries, a need for additional area for industrial or residential construction to accommodate present and reasonably anticipated future growth, and the extension of police, fire, sewer and other services to a substantial number of residents of adjacent areas (*City of Beloit v. Town of Beloit, supra,* 47 Wis.2d at 383); and the avoidance of pollution problems that might result from reliance on septic tanks in developing the annexed area (*Town of Waukechon, supra,* 53 Wis.2d at 598, 599). Moreover, in cases of direct annexation this court has recently held that "absent unfair inducement or pressures [by the annexing municipality] upon the petitioners, a showing of benefits to the annexed land can be considered in the overall question of need under the rule of reason." *Town of Lafayette, supra,* 70 Wis.2d at 629, 630.

We have examined carefully the lengthy and conflicting evidence regarding the City of Kenosha's need for industrial land. Evidentiary matters referred to elsewhere in this opinion and the following testimony, which the trial court was entitled to believe, is sufficient to sustain its findings of fact.

Mr. Ray Forgianni, employed on the staff of the City of Kenosha's Planning Department, testified with respect to a recent and comprehensive study undertaken to determine what lands in the City were immediately or potentially available for industrial development. The results of Forgianni's study were that within the City proper, 115 acres were zoned and available for heavy industrial use and 14 acres were zoned and available for light industry. Of the 115 acres, one 76 acre site was for sale only as a single parcel and was really available only to large industries or developers. The owners of a 25 acre parcel required that they construct any buildings on the site and that any structure be metal. In addition, Forgianni listed 25.5 acres presently zoned E Commercial as being readily available for industrial use. Thus the total amount of land in the City that is vacant and available

or potentially available for industrial use is about 155 acres, according to Forgianni, and about 100 acres of this land is subject to restrictions imposed by the owners tending to impair its availability or suitability to buyers.

Based upon his study and experience, Forgianni testified that in his opinion there is "a basic need for more industrial land in the City of Kenosha," and that the City's supply of industrial land was insufficient to satisfy the demand.

Robert Kolstad, the Kenosha City Planner, testified that there was an extreme shortage of industrial land in the City. He related several instances in which he had recently been approached by industrial concerns looking for plant sites. It is true, as the Town asserts in its brief, the instant annexation does not appear to be suitable for the particular projects mentioned. However, Kolstad's testimony does reflect a need for industrial land generally; the City need not show that it has a line of buyers waiting to purchase the particular land sought to be annexed to show that a need for industrial property exists.

In the area of municipal services, the general manager of the Kenosha Water Utility testified that the annexed territory could be serviced from a 12-inch water main presently terminating about 100 feet north of the annexation, and the Kenosha city engineer testified that the area could receive storm and sanitary sewer service from large sewer mains presently terminating at the northern boundary of the annexation. No lift station would be needed. The engineer testified that from an engineering standpoint an 8-inch sanitary sewer in the Burlison subdivision, Town of Pleasant Prairie, could also be extended into the annexation. However, he indicated that the existing lift station and probably the pipe itself would be inadequate to service the area if developed for industrial use.

John J. Maurer, Town Chairman of Pleasant Prairie, indicated the Town hopes one day to supply most of its territory with sewer service by means of an interceptor connecting with the City's system, but that the Town lacks funds to do so now. Maurer conceded that the annexation could certainly be developed with sewers and water if it were in the City.

There was no real dispute that the annexed area is physically suitable and adaptable for industrial use. The only qualification raised by an expert witness testifying for the Town was the possibility that because of a 10-foot change in elevation across the area it would not be suitable for very large plants due to the cost of excavation. As discussed above, nothing in the Town's arguments with respect to zoning and land use calls for a finding that the land is not reasonably suitable for industrial use or that the City does not have a reasonable present or future need for industrial property.

Notice of the annexation and a scale map of the area were sent to the head of the planning function in the Department of Local Affairs and Development, as required by sec. 66.021(11), Stats. No finding that the annexation was against the public interest was made. This court has indicated that the absence of a finding that annexation is against the public interest may be considered as evidence in favor of the annexation. *Town of Mount Pleasant v. City of Racine,* 28 Wis.2d 519, 527, 137 N.W.2d 656 (1965).

On this record the trial court's findings with respect to need must be sustained. The City of Kenosha was not required to exhaust every available acre of industrial land before seeking to assure an adequate supply. The City could properly annex suitable industrial land in reasonable anticipation of its future needs, and it could annex such lands to provide a reasonable present inventory of available sites to satisfy the varying requirements of industrial concerns that may wish to locate within the

City's boundaries. The annexation in this case is supportable on both of these grounds. It is further supported by the existence of a clear benefit to the annexed territory, in the form of sewer and water service which the City can provide but which the Town cannot supply in the foreseeable future. We conclude that the Town did not sustain its burden of proving that no reasonable need for the annexation existed.

## V.

The Town argues, in substance, that the boundaries of the annexation are arbitrary and capricious (1) because the property of two landowners who objected to annexation was included, and (2) because the area was shaped in a manner which did not include any resident electors, thereby precluding the possibility of a referendum on the annexation. The Town asserts that the City Planner's involvement in the drafting of the annexation petition is sufficient to charge the town with responsibility for the boundaries of the area. We find that these contentions lack merit.

The Town recognizes that where direct annexation proceedings are initiated by property owners, the general rule is that the annexing municipality is not to be charged with arbitrary action in the drawing of boundary lines. *Town of Waukesha v. City of Waukesha, supra,* 58 Wis.2d at 531; *Town of Lyons v. City of Lake Geneva, supra,* 56 Wis.2d at 338. In such cases the choice of boundaries is a matter of discretion with the petitioners. *Madison v. Monona,* 10 Wis.2d 32, 40, 102 N.W.2d 206 (1960). As regards annexations under sec. 66.021 (2) (a), Stats., it is only where the annexing municipality itself is one of the petitioning land owners or where the municipality otherwise is shown to be the real controlling influence in the proceedings, that the boundaries of an annexation will be scrutinized for an abuse of municipal dis-

cretion by the courts. *Town of Fond du Lac v. City of Fond du Lac, supra.*

In the case at bar the City of Kenosha was not among the petitioning landowners. Nor does the record disclose such dominance of the petitioners by the City as to charge the City with the petitioners' selection of boundaries. The Ganglers conferred with the City Planner before filing their petition. The City Planner explained the requirements and procedures set forth in sec. 66.021, Stats., and pointed out the need to include in the annexation property owned by Mr. Lawler in order to create contiguity to existing corporate limits. He provided the Ganglers with forms to aid in drafting the petition. The Planner also suggested that some land to the east of the proposed extension of 60th avenue (which would be necessary to allow development of the annexed territory) be included so that the municipal service facilities to be installed with the street would provide service to both sides of the street. However, the evidence shows that the Ganglers initiated contact with the City regarding annexation and that the motivating force behind the annexation came from them. There is no evidence in the record to show that enactment of the annexation ordinance was conditioned upon the Ganglers' following the City Planner's suggestions with respect to inclusion of additional land or to otherwise indicate that the decision on what land should be included was not made by the Ganglers. The City Planner testified that it is his normal practice to provide assistance of a character similar to that provided to the Ganglers and that he had also assisted Mr. Lawler in drafting a petition to oppose industrial zoning for the annexed territory.

The petitioners are not shown by this record to have been effectively acting as agents of the City in carrying out a municipal scheme. What was said in the *Town of Waukesha case* aptly describes the situation here:

"Where property owners have initiated the direct annexation proceedings involved, we cannot ignore their right to so petition unless we find some Svengali-Trilby relationship between the municipality and the petitioners involved. Here there is no gainsaying that the city of Waukesha wanted, encouraged and aided the petitioners in acting as they did. But there is no evidence that would make the city of Waukesha a puppeteer and the petitioners puppets dancing on a municipal string. They acted in the light of their desires and their best interests as they saw them and their right to do so, statutorily provided, is not to be disregarded." 58 Wis.2d at 530.

The annexation here was designed in a manner which did not include the residences of any electors, and the referendum provided under sec. 66.021(5)(a), Stats., was therefore not available. However, we have observed that

"Where landowners petition for annexation, they are under no obligation . . . to include persons or areas of no concern to them." *Town of Waukesha, supra,* 58 Wis. 2d at 532.

In sec. 66.021(2)(a)–2, the legislature has expressly provided a method for annexation of land upon which no electors reside, and it was proper for the Ganglers to avail themselves of this method if they so desired.

The Town relies on *Town of Fond du Lac v. City of Fond du Lac, supra.* We there held that the creation of an island of town land within an annexation for the sole purpose of assuring the annexation's success by excluding electors opposed to the annexation was arbitrary, capricious and an abuse of discretion. The City of Fond du Lac had been among the petitioning landowners, had employed various improper tactics to induce electors to sign the annexation petition, and had been the controlling force behind the entire annexation process. In the case at bar the annexed area is a compact quadrilateral con-

taining no internal exclusions,[4] and as we have already stated, the Ganglers, not the City of Kenosha, were the real controlling parties. Where the boundaries of an otherwise unexceptionable direct annexation are fixed by petitioners, such as the Ganglers, without the exercise of undue influence by the annexing city or village, we see no reason why the petitioners may not determine those boundaries so as to insure the annexation's success.

It is contended by the Town that inclusion within the annexation of the land of two landowners who objected to the annexation renders the annexation arbitrary and capricious, and therefore invalid. Mr. Timothy Lawler testified in opposition to the annexation. Mr. William Kaphengst may have been opposed to the annexation at one time, but for reasons that do not appear in the record he was not called as a witness at the trial. Neither Kaphengst nor Lawler are parties to the present action.

In *Town of Madison v. City of Madison*, 12 Wis.2d 100, 106 N.W.2d 264 (1960), the City of Madison, as owner of certain lands in the Town, petitioned itself for annexation under sec. 66.021(2), Stats. The City, like the Ganglers here, included certain property owned by others in its petition in order to create contiguity with its existing boundaries. No electors resided on the land, and though three other owners also signed the petition, the City alone owned over half of the territory. The non-signing minority held about 151 acres out of a total area of 342 acres. The court recognized (*Id.*, at 105) that "the inevitable result is the city controls the annexation and can enforce the annexation against the wishes of the minority private landowners," and noted that such control might be a hardship on the minority. The court never-

---

[4] Creation of town islands by annexation is now expressly prohibited by statute. Sec. 66.021(15) provides in part that after December 2, 1973, "no city or village may, by annexation, create a town area which is completely surrounded by said city or village."

theless concluded that the City could count its own lands in a petition under sec. 66.021(2), and that the annexation should be upheld.

The mere existence of objections to annexation among some affected landowners does not invalidate the annexation. Where no electors reside on the land to be annexed, the legislature has provided that annexation may be accomplished on the basis of a petition signed by the owners of half the land in area or half the real estate in assesed value. Sec. 66.021(2)(a)-2., Stats. Where all landowners (and electors if any) are in favor of annexation and sign the petition, the special streamlined procedure created by sec. 66.021(12) may be employed. It is implicit in these provisions that under sec. 66.021(2)(a) the property of minority landowners may be annexed without their acquiescence. The legislature would not have made separate provision for the case of annexation by unanimous approval if it were intended that unanimous approval be required where annexation is sought under the general provisions of sec. 66.021(2), Stats. As we recognized in the *Town of Madison Case,* majority rule may be a hardship upon minority landowners. However, the statute is clear and unambiguous in requiring this result. If a different result is to be achieved the remedy lies with the legislature, not with the courts.

*By the Court.*—Judgment affirmed.