TOWN OF MENASHA, Plaintiff-Respondent,

v.

CITY OF MENASHA, Defendant-Appellant.

Court of Appeals

*No. 91–2659. Submitted on briefs April 21, 1992.—Decided June 24, 1992.*

(Also reported in 488 N.W.2d 104.)

183

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey S. Brandt,* city attorney, Menasha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John D. Claypool* of *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

Before Nettesheim, P.J., Brown and Anderson, JJ.

NETTESHEIM, P.J.   In this annexation case, the trial court ruled that a portion of the city of Menasha's annexation from the town of Menasha was invalid. The court severed this portion from the annexation and left intact the balance of the annexation.

The city appeals, challenging the trial court's findings that the city was the controlling influence in fixing the boundaries of the annexation territory and that the city did not have a reasonable present or demonstrable future need for the annexed territory. The city also challenges the trial court's use of the annexation ordinance's severability clause to salvage a portion of the annexation. We uphold the court's findings and deem the severability issue waived. We affirm the judgment.

Three petitioners, each owning a respective interest in three lots located in the town, filed an annexation petition with the city, proposing the annexation of their three lots plus a fourth lot. The petitioners' three lots were vacant and total 1.7 acres. The fourth lot is a commercial site known as the "PDQ mall" and totals 1.4 acres. The owners of the PDQ property objected to the proposed annexation.

The annexation territory, shown in the following diagram, is bounded by the town on the west and north and by the city on the east and south.[1] In the diagram, the three petitioners' lots are designated as lots 1, 2 and 3; the PDQ property is designated as lot 4:

[1]The annexation territory, which includes lots 1 through 4 on the diagram, is located within a larger ten-lot rectangular "peninsula" which is bounded by the town on the west and by the city on the other three sides. The owners of the other six lots in the "peninsula" apparently objected to the annexation. Their lots were not included in the annexation petition. These six lots, which all front on Racine Road only, lie in the northwest portion of the "peninsula" and abut lot 1 to the rear.

TOWN

CITY

OF

OF

MENASHA

MENASHA

FIFTEENTH ST.

RACINE ROAD

APPLETON ST.

BEECHWOOD LANE

*LOT 1*

*LOT 3*

LOT 2 →

*LOT 4*

KAREN DR.

TWELFTH ST.

·············· = *CITY OF MENASHA CORPORATE LIMITS*

187

On March 20, 1990, the city adopted an annexation ordinance in accord with that proposed in the petition. The town responded with this declaratory judgment action seeking to have the ordinance declared invalid. The parties agreed to submit the controversy to the trial court by written briefs with attached exhibits, and the court rendered its written decision on the basis of these materials. Applying the "rule of reason" doctrine, the court declared the ordinance invalid as to lot 4. However, relying on the ordinance's severability clause, the court left intact the annexation of lots 1, 2 and 3. The city appeals. We will state additional facts as we discuss the issues.

## THE LAW OF ANNEXATION GENERALLY

This is a direct annexation case. Direct annexation can be initiated in various ways. *See* sec. 66.021(2), Stats. Where, as here, no electors reside in the area proposed for annexation, the annexation petition must be signed by "the owners of one-half of the land in area within such territory, or . . . the owners of one-half of the real property in assessed value within such territory." Section 66.021(2)(a)2. The town concedes that the annexation petition satisfied all statutory requirements.

Upon judicial review, the courts may not inquire into the wisdom of an annexation ordinance or determine whether it is in the best interest of the parties to the proceeding or of the public. *Town of Pleasant Prairie v. City of Kenosha,* 75 Wis. 2d 322, 327, 249 N.W.2d 581, 585 (1977). These matters are inherently legislative and not judicial in character. *Id.* However, mere compliance with statutory procedures does not insulate an annexation ordinance from judicial review. Assuming that the

prescribed procedures have been followed in the adoption of an annexation ordinance, the ordinance may nevertheless be invalidated if it is arbitrary and capricious or an abuse of the municipality's discretion. *See Town of Mt. Pleasant v. City of Racine,* 28 Wis. 2d 519, 524, 137 N.W.2d 656, 660 (1965); *see also Town of Lyons v. City of Lake Geneva,* 56 Wis. 2d 331, 337, 202 N.W.2d 228, 232 (1972).

In making this assessment, the reviewing court looks to the doctrine known as the "rule of reason." *Pleasant Prairie,* 75 Wis. 2d at 326–27, 249 N.W.2d at 584. To pass muster under the rule of reason, the annexation must satisfy three requirements: (1) exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) some reasonable present or demonstrable future need for the annexed property must be shown; and (3) no other factors must exist which would constitute an abuse of discretion on the part of the municipality. *Id.* at 327, 249 N.W.2d at 584–85.

When challenged under the rule of reason, an annexation ordinance, like all legislative enactments in general, enjoys a presumption of validity, *id.* at 327, 249 N.W.2d at 585, and the burden of proving the ordinance arbitrary and capricious, and therefore an abuse of municipal discretion, rests with the party so claiming. *Mt. Pleasant,* 28 Wis. 2d at 526, 137 N.W.2d at 661.

The third prong under the "rule of reason" test—the abuse of discretion inquiry—is subject to the standard of review applied to fact finding. *See Town of Medary v. City of La Crosse,* 88 Wis. 2d 101, 124, 277 N.W.2d 310, 321 (Ct. App. 1979). From this we conclude that the other two inquiries under the "rule of reason"

189

test—arbitrariness as to boundaries and the showing of a present or future need for the annexed property—are also fact inquiries. We will not reverse factual findings by a trial court unless such are clearly erroneous. *See Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983); sec. 805.17(2), Stats.

However, the application of established facts to a legal standard is a question of law. *Nottelson v. DILHR,* 94 Wis. 2d 106, 115-16, 287 N.W.2d 763, 768 (1980). Here the legal standard is whether the annexing authority acted arbitrarily and capriciously. This ultimate determination, we conclude, presents a question of law. As to such matters, we are not required to defer to the trial court's conclusion. *Great Lakes Trucking Co., Inc. v. Black,* 165 Wis. 2d 162, 168, 477 N.W.2d 65, 67 (Ct. App. 1991).

## THE TRIAL COURT'S RULING

The trial court concluded that the city's annexation of the PDQ property violated the rule of reason. The court based this conclusion upon its findings that:

> it was the city which influenced the inclusion of said lands, and . . . no reasonable need for such inclusion exists.

The city contests both findings on appeal.

## ARBITRARINESS

Under the rule of reason, the boundaries of an annexation may not contain irregularities and exclusions which establish arbitrariness. *Town of Medary,* 88 Wis. 2d at 114, 277 N.W.2d at 317. The issue of arbitrary

190

boundary-drawing generally arises when landowners or electors opposed to annexation are excluded from the proposed area so as to ensure the success of the annexation. *Id.* at 114-15, 277 N.W.2d at 317. However, certain strategic inclusions of property can also result in the drawing of an arbitrary boundary.[2] *See Town of Waukesha v. City of Waukesha,* 58 Wis. 2d 525, 532, 206 N.W.2d 585, 588 (1973).

To survive judicial scrutiny under the "arbitrary boundary" prong of the rule of reason, the annexed area must meet two conditions: it must be an "unexceptional" shape, and the city must not be a petitioner.[3] *Town of*

---

[2] On the other hand, the mere inclusion of nonconsenting property owners does not serve to automatically invalidate an annexation. *See Town of Pleasant Prairie v. City of Kenosha,* 75 Wis. 2d 322, 343, 249 N.W.2d 581, 592 (1977). Nonconsenting property owners can be included in an annexation to ensure the annexation's success provided that the conditions of the rule of reason are met.

[3] One of the city's arguments is based upon its misunderstanding of this rule. The city contends that it was error for the trial court to have applied the "arbitrary boundary" prong because a "threshold . . . finding of 'irregularities' in boundary lines is necessary" for it to do so. The law, however, is that the boundaries of an annexed area will not be scrutinized for arbitrariness where the annexed area is an unexceptional shape, *and* the city is not a petitioner. Thus, even where the shape of the boundary lines is unexceptional, a challenge can be made that the city was effectively the petitioner. This is such a case.

In addition, the requirement as to "unexceptional share" is not without exception. There are some circumstances in which the shape of an annexed parcel's boundaries are so "irregular" in shape, that shape alone—apart from any consideration of whether the city was acting as a petitioner—can serve to invalidate the annexation ordinance. *See Town of Medary v. City of La*

*Medary,* 88 Wis. 2d at 115, 277 N.W.2d at 317. The general rule is that where direct annexation proceedings are initiated by the property owners, rather than the annexing municipality itself, the latter is not to be charged with arbitrary action in drawing the boundary lines. *See id.*

However, where the annexing municipality is shown to be the real controlling influence in the annexation proceedings, it effectively assumes the role of a petitioner. *Pleasant Prairie,* 75 Wis. 2d at 339–40, 249 N.W.2d at 591. "Influencing" the proceedings, in this context, means more than providing mere technical assistance or recommendations to the petition signers, *see id.* at 340, 249 N.W.2d at 591; rather, it means conduct by which the annexing authority dominates the petitioners so as to have effectively selected the boundaries.

The trial court wrote and found as follows:

> [The petitioners] sought annexation to the City of Menasha in order to obtain city services. They sought help in developing their petition from agents or employees of the city. The owners had no interest in including property other than that owned by them, and the boundary line for property to be included in their Petition was developed by agents or employees of the city . . . .. Here, the Petitioners cared only about making sure their developed property was annexed. Those owners did not draw the boundary lines that made up the total annexation.

*Crosse,* 88 Wis. 2d 101, 115–16, 277 N.W.2d 310, 317 (1979). The shape of the boundary, as it pertains to this prong of the rule of reason, is not at issue here. Hence we address only the question of whether the city was effectively acting as the petitioner in this case.

These findings are supported by the evidence and support the trial court's ultimate finding that the city—not the petitioners—determined and drew the boundaries for the area sought to be annexed.[4] These findings (and the evidence upon which they are premised) do not support the city's claim that its actions vis-a-vis the petitioners were merely advisory. *See Pleasant Prairie,* 75 Wis. 2d at 340, 249 N.W.2d at 591; *see also Town of Waukesha,* 58 Wis. 2d at 530, 206 N.W.2d at 587. Rather, the trial court in effect determined that the city dominated the petitioners on the matter of boundaries such that the city was properly charged with selecting the boundaries. *See Pleasant Prairie,* 75 Wis. 2d at 340, 249 N.W.2d at 591.

In *Pleasant Prairie,* the supreme court stated: "There is no evidence in the record to show that . . . the decision on what land should be *included* [in the annexation] was not made by the [petitioners]." *Id.* (Emphasis added.) That statement cannot be made here. The evidence, in fact, is to the contrary. The trial court's finding that the annexation ordinance, as applied to the PDQ property, fails the first prong of the rule of reason is not clearly erroneous. We affirm the court's finding. As such, the legal conclusion follows that the city acted arbitrarily.

In light of this holding, we need not necessarily move to the trial court's further finding that the city did not demonstrate any reasonable present or future need for the PDQ property. Nonetheless, we choose to do so.

---

[4]These findings are also supported by the fact that the PDQ property had been the subject of an earlier annexation which was overturned upon judicial review.

On this question, the trial court correctly noted that inclusion of the PDQ property was not necessary to satisfy any contiguity requirements because lots 1, 2 and 3 were already contiguous to the city. *See Pleasant Prairie,* 75 Wis. 2d at 340, 249 N.W.2d at 591. The court also observed that the ordinance itself recited that the basic need for the annexation was to provide city services to the *undeveloped* land along Appleton Street. The court appropriately noted that the PDQ property was a *developed* commercial site and that lots 1, 2 and 3 were the only undeveloped land in the annexation territory. The court also noted that other "need-related" evidence traveled only to the undeveloped lots, not the developed lot 4.

The only evidence arguably supporting need was a letter from the city engineer who opined that the annexation of the PDQ property would make "engineering easier in terms of assessing future improvements . . .." However, the trial court noted that the evidence revealed no plans for such future improvements.

We recognize that if the annexing authority shows any reasonable need for the annexation, the courts must respect the legislative decision to annex. *See City of Beloit v. Town of Beloit,* 47 Wis. 2d 377, 390–91, 177 N.W.2d 361, 369 (1970). Nonetheless, the rule of reason requires a showing of "demonstrable need." *Id.* at 391, 177 N.W.2d at 369. This requirement is not satisfied by showing that the territory sought for annexation is merely desirable, better than that already controlled, or that a particular city will best be able to provide service to the territory. *Id.* at 391, 177 N.W.2d at 369–70. Absent such demonstrable need, the annexation is, of necessity, arbitrary and capricious. *Id.* at 391, 177 N.W.2d at 369.

Here, the city engineer's opinion rests upon a premise not established. Moreover, it is a statement which arguably would apply to any lands near or adjacent to the existing boundaries of any annexing authority. We affirm the trial court's finding that the evidence revealed no reasonable present or demonstrable future need by the city for the PDQ property.

## SEVERABILITY

Next, the city claims that the trial court erred by using the severability clause in the annexation ordinance to salvage the annexation of lots 1, 2 and 3. The city argues that by severing the PDQ property, the court has effectively usurped a legislative function and fashioned a different annexation than that enacted by the common council.

The city seems to assume that this question bears upon the substantive validity of the annexation. It does not. We have already upheld the trial court's ruling that the annexation fails under the rule of reason. Thus, if the city is correct that the trial court could not sever, then the entire annexation falls. The city's appellate brief is not clear as to whether it anticipates this possible result of its argument.

Regardless, we deem the issue waived. Although the town initially sought to have the entire ordinance invalidated, it modified this stance in its trial court reply brief, asking that the trial court, in the alternative, detach the PDQ property from the annexation. We would not invoke waiver against the city on this basis alone since the town first raised the prospect of severability via its trial court reply brief. However, following the court's

195

written decision, the city brought a motion for reconsideration which the court addressed. While this motion quarreled with the boundaries resulting from the court's decision, the city did not argue, as it does on appeal, that the court was without authority to salvage a portion of the annexation based on the severability clause in the ordinance.

Thus, we are faced with a situation where the city failed to bring the error alleged on appeal to the trial court's attention. The city never gave the court an opportunity to address the claimed error and to correct it if necessary. This procedure frustrates one of the fundamental principles underlying the waiver rule. *See Air Wis., Inc. v. North Cent. Airlines, Inc.,* 98 Wis. 2d 301, 311, 296 N.W.2d 749, 753 (1980).

Although waiver is a rule of judicial administration which does not absolutely prohibit us from reviewing an issue, the general rule is that matters not brought to the attention of the trial court will not be reviewed on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 444, 287 N.W.2d 140, 145–46 (1980). On balance, we choose to invoke waiver against the city. The city had the opportunity to ask the court to reconsider its severability ruling. It did not do so. Moreover, as we have noted, the city's appellate brief suggests that it may not have considered the full ramifications of its severability argument. In addition, the city points to nothing about the resultant annexation which offends any annexation principles or considerations. Finally, we are properly mindful of the interests of the petitioners whose properties stand

annexed and who would face the prospect of detachment without having been heard in this matter.

*By the Court.*—Judgment affirmed.