BURKETT & ASSOCIATES, INC. CENTURY 21,
Plaintiff-Appellant-Cross-Respondent,

v.

James M. TEYMER and Lori K. Teymer,
Defendants-Respondents-Cross-Appellants.

Court of Appeals

*No. 2008AP1509. Submitted on briefs February 3, 2009.
—Decided April 21, 2009.*

2009 WI App 67

(Also reported in 767 N.W.2d 623.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Sven W. Strutz* and *Timothy L. Vocke* of *Eckert, Kost & Vocke LLP*, Rhinelander.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of *Steven M. Lucareli* of *Lucareli Law Offices, LLC*, Eagle River.

A nonparty brief was filed by *Debra P. Conrad* of Madison, for Wisconsin Realtors Association.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Burkett and Associates, Inc., a real estate broker, sued James and Lori Teymer for a commission on the sale of property owned by the Teymers. The sale occurred after Burkett's listing contract with the Teymers expired. Burkett argues it negotiated with the buyer before the listing contract expired and is therefore entitled to the commission under the contract. The circuit court disagreed and granted judgment dismissing Burkett's lawsuit. However, we agree with Burkett. We therefore reverse and remand with directions to grant judgment to Burkett

for the commission and to determine the attorney fees due Burkett under the contract.[1]

## BACKGROUND

¶ 2.   The Teymers listed property for sale with Burkett in July 2003 for one year. The property did not sell. In September 2004, they relisted the property for another year. The listing contract—a WB-1 form approved by the Wisconsin Department of Regulation and Licensing—gave Burkett the exclusive right to sell the property. Under the contract, the broker is entitled to a commission if a purchaser is procured during the term of the contract, whether found by the broker or the seller. The broker also is entitled to a commission if the property is sold to a protected buyer within one year after termination of the contract. A protected buyer is an individual or entity with whom the broker "negotiated to acquire an interest in the Property" during the contract term. To be entitled to a commission, the broker must deliver the protected buyer's name to the seller no later than three days after the expiration of the contract.

¶ 3.   Before relisting with Burkett, Lori Teymer attended an informational open house held by American Transmission Company (ATC). ATC was planning a project to upgrade and expand a substation near the Teymers' property and hoped to acquire property near the facility. After relisting, the Teymers attended another open house. At the second open house, the Teymers spoke with Thomas Leuker, the owner of the

---

[1] The Teymers cross-appeal the amount of attorney fees the circuit court awarded them, as the prevailing party, under the contract's fee-shifting provision. We do not reach this issue because we reverse the judgment.

company ATC uses to acquire real estate. Leuker noted in his contact diary that the Teymers confirmed they were "still interested in working with ATC to sell their property" and that he informed them he would be their contact person. Leuker followed up with the Teymers on January 6, 2005, to discuss the consent form they would need to sign before ATC, as a regulated utility, could negotiate with them directly.

¶ 4. On January 11, 2005, Gerald Burkett, the owner of Burkett Associates, independently learned of ATC's interest in the Teymers' property while attending an Eagle River town meeting about the expansion project. At the meeting, an ATC representative pointed out a property it was interested in acquiring. Burkett announced that the property belonged to the Teymers, it was listed with his company, and he would be glad to sell it to ATC. The following day, he advised his employee, Mary Kmiotek, to contact ATC about the property. Kmiotek called Francis Fennessy of ATC that day and "provided [him] with information regarding the property in general, the amount of acreage, the house that was sitting on it, and the other structures . . . ."

> I told him the price, I provided information in surveys and maps, I made them aware of an existing survey easement across the property which they needed to be aware of if they were going to make a purchase . . . .

Fennessy referred her to Leuker.

¶ 5. Upon hearing the property was listed with Burkett, Leuker called the Teymers to confirm this was true. He asked Lori Teymer if he could contact the realtor directly, and she replied that he could. The next day, Leuker returned Kmiotek's call and asked that she send him information on the property. Kmiotek faxed Leuker various information, including survey maps of

the property, the real estate condition report, and the listing sheet stating, among other things, the property's price.

¶ 6.   Shortly after, the Teymers asked Burkett to cancel their listing contract. On January 26, they met with Jerry Burkett, who agreed to draw up a termination agreement amending the contract to expire at midnight that night. He sent two copies of the amendment to the Teymers by certified mail, and included a cover letter stating:

> The following is a list of protected buyers. Please be assured that every effort will be made to further the protected prospects' interest. If the prospect should contact you directly or any changes have occurred since listing, please notify us immediately. Broker is registering the following protected individuals:   ... Franc Fennessy, ATC (American Transmission Corporation) its successors, affiliates, &/or assigneds; Tom Leuker, Land Services (ATC) its successors, affiliates &/or assigneds.

The Teymers signed the amendment and returned it to Burkett.

¶ 7.   Despite the request to notify Burkett of future contacts with ATC, the Teymers negotiated directly with ATC to sell their property. ATC bought the property in August 2005.

¶ 8.   Burkett sued the Teymers for its commission under the listing contract, arguing ATC was a protected buyer.[2] Following a bench trial, the circuit court concluded ATC was not a protected buyer because Burkett

---

[2] Burkett also claimed the Teymers breached the contract by failing to refer ATC to Burkett after attending ATC's informational meetings. Because we conclude ATC was a protected buyer, we do not address this claim.

had not negotiated with ATC. It further concluded there had been no "meeting of the minds" between the parties about Burkett's designation of ATC as protected. It therefore granted judgment in favor of the Teymers and awarded them attorney fees under the contract's fee-shifting provision.

## DISCUSSION

¶ 9. We address three issues in this appeal: (1) whether Burkett negotiated with ATC, (2) whether the Teymers needed to agree that ATC was a protected buyer, and (3) whether Burkett timely notified the Teymers that ATC was being named as a protected buyer. The circuit court made certain factual findings, which we will uphold unless clearly erroneous. *Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 190, 488 N.W.2d 104 (Ct. App. 1992). However, we review independently the court's application of established facts to the language of the contract. *See id.*

### 1. Whether Burkett negotiated with ATC

¶ 10. According to the listing contract, Burkett is entitled to a commission if the property is sold to a protected buyer within one year after the contract is terminated. A protected buyer is defined by the listing contract as someone with whom Burkett "negotiated to acquire an interest in the Property" during the term of the contract. The listing contract defines "negotiate" as "to discuss the potential terms upon which buyer might acquire an interest in the Property or to attend an individual showing of the property." ATC did not attend an individual showing of the property. Therefore, the

only question is whether Burkett and ATC discussed the potential terms upon which ATC might acquire an interest in the Teymers' property.

¶ 11. The circuit court found that there were contacts between Burkett and ATC about the sale of Teymers' property. But it concluded "contacts aren't sufficient to constitute negotiation under the terms of this agreement."

¶ 12. The court cited *Sonday v. Dave Kohel Agency, Inc.*, 2006 WI 92, 293 Wis. 2d 458, 718 N.W.2d 631. Both parties agree *Sonday* controls, but they disagree about its application. The Sondays entered into a listing contract with broker Dave Kohel. Kohel approached the Village of Pleasant Prairie and suggested the village purchase the Sondays' property for around two million dollars. The village administrator declined. This was the extent of the discussions between Kohel and the village about the Sondays' property. *Id.*, ¶ 6. Before the contract terminated, however, Kohel served the Sondays with a notice of extension listing various protected buyers, including the village. *Id.*, ¶ 12. The village subsequently acquired the Sonday's property by eminent domain for $1,382,000. The Sondays sued Kohel, seeking a declaration he had no right to a commission under the listing contract. *Id.*, ¶¶ 15, 18. The circuit court concluded the village was a protected buyer and our supreme court agreed:

> Kohel's actions constitute[d] a "negotiation" with the Village, as defined in the listing contract. Kohel initiated contact with the Village of Pleasant Prairie on May 28, 2002. Kohel suggested to the Village that it purchase the Sonday property for approximately $2 million. The Village refused the offer. During this . . . conversation . . . Kohel and Village Administrator Pollocoff clearly discussed "potential terms upon which the

buyer might acquire an interest in the Property," fulfilling the listing contract requirement.

*Id.*, ¶ 34.

¶ 13.   We agree with Burkett that it did at least as much—if not more—than the broker in *Sonday*. Burkett's employee Kmiotek had a phone conversation with ATC's Fennessy in which Kmiotek provided Fennessy with information about the property, including its price. Fennessy then referred Kmiotek to Leuker, who asked Kmiotek to send him information on the property. Kmiotek complied by faxing all the information ATC needed to acquire the property. The exchange of information between Fennessy and Kmiotek and then Leuker and Kmiotek constitutes a negotiation:   discussion of "the potential terms upon which [ATC] might acquire an interest in the [Teymers'] Property."

¶ 14.   We are not suggesting that a broker negotiates by unilaterally sending information to other parties. Here, ATC expressed an interest in the property and asked for sales information. Burkett then provided that information. This two-way communication fulfills the contract's definition of negotiate.

## 2.   Whether the parties must agree that a buyer is a protected buyer

¶ 15.   The circuit court also concluded ATC was not a protected buyer because the parties did not agree:

> The bottom line is I don't think there was a meeting of the minds as to protecting any buyers. I think Burkett and Associates wanted the listed buyers . . . to be protected. I think that the Teymers didn't want those people to be protected and they never really reached an agreement on that issue.

¶ 16. The contract contains no requirement that the parties agree who will be named as protected buyers. Rather, a buyer is protected if it "negotiated to acquire an interest in the Property . . . during the term of [the] listing . . . ." According to the terms of the contract, then, the broker's designation of protected buyers is a unilateral action that does not require the seller's assent. A meeting of the minds is unnecessary.

### 3. Whether Burkett timely delivered notice that ATC was a protected buyer

¶ 17. In order to be entitled to a commission, Burkett had to meet one other requirement:  it had to properly notify the Teymers that it was naming ATC as a protected buyer. The Teymers argue Burkett failed to do so.

¶ 18. Lori Teymer testified the mailing she received with the amended contract did not include the cover letter naming protected buyers. Kmiotek testified the letter was included. The circuit court, as fact finder, found Kmiotek sent the list:

> I don't doubt that Ms. Kmiotek, as was her regular practice, sent the Teymers by certified mail . . . a list of protected buyers even though it isn't listed on that document Exhibit "10". It would be the ordinary course of practice for her to do that. I heard strong testimony from Mr. Burkett and Ms. Kmiotek that there always was an intent on the part of the agency to protect those buyers. I don't know why in the world she would send a blank [form] not protecting buyers if their goal was to protect their commission.

When there is conflicting testimony, the fact finder "resolves these conflicts and weighs the credibility of witnesses." *Skrupky v. Elbert*, 189 Wis. 2d 31, 51, 526 N.W.2d 264 (Ct. App. 1994). Because the circuit court's resolution of the conflicting testimony is not clearly erroneous, we defer to this finding.

¶ 19.   The Teymers assert that even if the letter was included, it was not delivered within the three days specified by the contract since they received the mailing seven days after the contract terminated. This argument ignores the plain language of the contract: "delivery of documents or written notices related to this Listing may be accomplished by . . . 2) depositing the document or written notice postage or fees prepaid or charged to an account in the U.S. Mail or a commercial delivery system, addressed to the Party, at the Party's address . . . ." The date of delivery, then, is the date of mailing, not receipt. The record contains a certified receipt for mail from Burkett to the Teymers dated January 26, 2005. The court found this mailing contained a cover letter naming protected buyers. Therefore, Burkett complied with the requirement to deliver the names of protected buyers to the seller within three days of the contract's termination.

## ATTORNEY FEES

¶ 20.   The circuit court awarded the Teymers attorney fees under the following fee-shifting provision:

**Attorney Fees**:   Should litigation arise between the parties in connection with this listing, the prevailing party shall have the right to recover reasonable attorney fees.

Because we are reversing the judgment and remanding with directions to grant judgment to Burkett, Burkett

is the prevailing party, not the Teymers. Therefore, Burkett is entitled to recover reasonable attorney fees. We remand for the court to determine those fees.

*By the Court.*—Judgment reversed and cause remanded with directions.