TOWN OF BARABOO,
Plaintiff-Appellant,

v.

VILLAGE OF WEST BARABOO,
Defendant-Respondent,

LIVING TRUST OF Lloyd and Karen BYXBE
and N. Robert Byxbe, Intervenors-Defendants.

Court of Appeals

*No. 2004AP980. Submitted on briefs October 14, 2004.
—Decided April 28, 2005.*

2005 WI App 96

(Also reported in 699 N.W.2d 610.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Wayne L. Maffei* and *Natalie T. Bussan* of *Cross, Jenks, Mercer and Maffei*, Baraboo.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael S. Heffernan, Stephan J. Nickels* and *Allen A. Arntsen* of *Foley & Lardner, LLP*, Madison.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. DEININGER, P.J. The Town of Baraboo appeals a judgment that upheld an annexation by the Village of West Baraboo. The Town claims that the challenged annexation was invalid because (1) the Village improperly granted eleven separate annexation petitions in a single ordinance; (2) the Village failed to notify the Department of Administration and the Town that a twelfth petition would not be granted; and (3) the annexation violates the "rule of reason." The Town also claims the circuit court erred in deciding that the Town lacked standing to challenge the Village's amendment of

a tax incremental financing (TIF) district to include newly annexed land. We reject the Town's contentions and affirm the appealed judgment.

## BACKGROUND

¶ 2. The owners of twelve parcels of land situated in the Sauk County Town of Baraboo filed separate petitions under WIS. STAT. § 66.0217(2) (2003–04)[1] to annex their parcels to the Village of West Baraboo. The Village submitted the proposed annexations to the Department of Administration for its "advice" as required by § 66.0217(2). *See also* § 66.0217(6) (providing that department is to opine whether a proposed annexation is "in the public interest or is against the public interest" and notify the annexing body and affected town of its opinion). The department informed the Village and Town clerks by letter that it found the "proposed annexation . . . not to be against the public interest," and it recommended that the several annexations "be acted upon as a group (as they depend upon one another for contiguity with the existing municipal limit line)."

¶ 3. The Village enacted a single ordinance annexing the land comprising eleven of the twelve petitions. The twelfth parcel was not included because its owner no longer wished that parcel to be annexed.

¶ 4. The Town commenced an action to have the annexation declared "unlawful and invalid." The Town sought a similar declaration regarding the Village's subsequent amendment of an existing TIF district to include some of the newly annexed land. On the Village's motion, the circuit court dismissed the Town's

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

challenge to the amended TIF district, concluding that the Town lacked "a sufficient legally protectible interest to maintain this claim." Both parties then moved for summary judgment on the annexation challenge. The circuit court granted the Village's motion and denied the Town's. The court entered a judgment that declared the annexation in compliance with WIS. STAT. § 66.0217 and the rule of reason. The Town appeals.

## ANALYSIS

¶ 5.　We review the granting and denial of motions for summary judgment de novo, applying the same methodology and standards as the trial court. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law. *See id.* When, as here, both parties move for summary judgment and neither argues that factual disputes bar the other's motion, the " 'practical effect is that the facts are stipulated and only issues of law are before us.' " *See Lucas v. Godfrey,* 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991) (quoted source omitted).

*Single Annexation Ordinance*

¶ 6.　The Town's first claim is that the Village violated WIS. STAT. § 66.0217(2) when it enacted a single ordinance to annex parcels that were the subject of eleven separate annexation petitions. The proper interpretation of § 66.0217(2) presents a question of law, which we review de novo. *See State v. Setagord,* 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997). The statute provides in relevant part as follows:

487

. . . [I]f *a petition* for direct annexation signed by all of the electors residing in the territory and the owners of all of the real property in the territory is filed with the city or village clerk, and with the town clerk of the town or towns in which the territory is located, together with a scale map and a legal description of the property to be annexed, *an annexation ordinance* for the annexation of the territory may be enacted by a two-thirds vote of the elected members of the governing body of the city or village without compliance with the notice requirements of sub. (4).

Section 66.0217(2) (emphasis added). According to the Town, the emphasized language plainly requires that "an annexation ordinance" must be enacted for "a petition," meaning that a municipality may not enact a single ordinance granting several petitions as the Village did here. We disagree.

¶ 7. The Town correctly notes that municipalities must strictly comply with annexation statutes, and that substantial compliance will not save an annexation that is not accomplished in "strict conformity" with statutory mandates. *See Town of Blooming Grove v. City of Madison*, 70 Wis. 2d 770, 774, 235 N.W.2d 493 (1975). We are satisfied, however, that WIS. STAT. § 66.0217(2) permits the Village's enactment of a single ordinance to annex land that comprised multiple petitions. WISCONSIN STAT. § 990.001(1) provides that, unless it "would produce a result inconsistent with the manifest intent of the legislature, . . .[t]he singular includes the plural, and the plural includes the singular." We find no manifest legislative intent expressed in § 66.0217 to require a municipality to enact a separate annexation ordinance for each of several parcels that are the subject of separate annexation petitions under § 66.0217(2).

Quite simply, such a requirement can neither be found in the language of the statute nor reasonably inferred from it.

¶ 8. The Town, however, points to several published appellate opinions in which multiple petitions for annexation were granted by separate ordinances. *See Town of Waukesha v. City of Waukesha*, 58 Wis. 2d 525, 206 N.W.2d 585 (1973); *Town of Scott v. City of Merrill*, 16 Wis. 2d 91, 113 N.W.2d 846 (1962); *Town of Campbell v. City of La Crosse*, 2003 WI App 247, 268 Wis. 2d 253, 673 N.W.2d 696. The Town claims that these cases illustrate the proper way for a municipality to annex parcels that are the subject of separate petitions "in a manner consistent with the law." It acknowledges, however, that the single-versus-multiple ordinance question was *not* at issue in those cases. We go two steps further. The cited cases did not discuss whether separate ordinances were required for the individual petitions, and nothing in their analyses suggests that to be the case.[2]

---

[2] The Town cites the following language as indicating the supreme court's approval of the granting of multiple annexation petitions by separate votes on separate ordinances: " 'the annexation of the two separate parcels by different petition procedure was validly completed under the statute and the laws by separate votes of the city council.' " *Town of Waukesha v. City of Waukesha*, 58 Wis. 2d 525, 534, 206 N.W.2d 585 (1973). The dispute in that case, however, revolved around the fact that, had the two annexed parcels been combined in a single petition, the combined petition would not have met then-existing statutory requirements regarding the signatures of "the majority of the owners in area or in valuation." *Id.* at 528. The supreme court affirmed the annexations, and in the passage cited by the Town, endorsed the trial court's findings and conclusions that the annexations were separately accomplished, valid and not unreasonable. *Id.* at 533–34.

*Annexation of Less Than All Twelve Parcels*

¶ 9. The Town next contends that the Village's acquiescence with the request of one of the twelve original petitioners that its parcel not be annexed provides grounds for invalidating the annexation of the remaining eleven parcels. According to the Town, the "significant modification of the territory" resulting from the exclusion of one parcel required the Village, before proceeding, to notify the Town and the Department of Administration that the proposed annexation now encompassed only the remaining eleven parcels. The Town argues that by proceeding as it did, the Village "failed to satisfy the requirement that it obtain and review the advice of the Department on the annexation area." Again, we disagree.

Here, there is no claim that, had the eleven annexed parcels been combined in a single petition, the combined petition would have failed to meet the unanimity requirement of WIS. STAT. § 66.0217(2). Thus, there was no substantive difference between the Village's effecting the annexation by enacting a single ordinance encompassing eleven parcels or a series of eleven ordinances. In its reply brief, the Town speculates that the omnibus ordinance somehow runs afoul of the two-thirds vote requirement of § 66.0217(2) because it precluded individual village board members from voting for or against the annexation of each individual parcel. There is no dispute, however, that the ordinance annexing the eleven parcels obtained the necessary two-thirds vote. Prior to the board's enactment of the ordinance, any board member who believed that some but not all of the parcels should be annexed could have moved to amend the proposal, but there is no indication in the record that this occurred. We are satisfied that the passage of the annexation ordinance satisfied the statutory two-thirds vote requirement for the enactment of an ordinance annexing each petitioner's parcel.

¶ 10. We conclude there is no requirement that, for annexations under WIS. STAT. § 66.0217(2), the annexing body must obtain the department's review and advice regarding a modification to a proposed annexation that results in less land than originally proposed being annexed. The Village claims that the department's pre-annexation review under the subsection (2) procedure "is voluntary, not mandatory." It points out that WIS. STAT. § 66.0217(6), which sets forth the review requirement, applies to only those annexations where a notice of proposed annexation is required to be published:

> No annexation proceeding within a county having a population of 50,000 or more is valid *unless the person publishing a notice of annexation under sub. (4)* mails a copy of the notice to the clerk of each municipality affected and the department ... within 5 days of the publication. The department shall within 20 days after receipt of the notice mail to the clerk of the town within which the territory lies and to the clerk of the proposed annexing village or city a notice that states whether in its opinion the annexation is in the public interest or is against the public interest and that advises the clerks of the reasons the annexation is in or against the public interest .... The annexing municipality shall review the advice before final action is taken.

Section 66.0217(6)(a) (emphasis added). Annexations "by one-half approval" or "by referendum" trigger the publication requirement under subsection (4); a "direct annexation by unanimous approval" under subsection (2) does not. *See* § 66.0217(3) and (4).

¶ 11. Not only is there no publication requirement for annexations accomplished under WIS. STAT. § 66.0217(2), an ordinance under that subsection need

not be enacted within a specific time frame. Neither is there a requirement in subsection (2) for the governing body to "first review the reasons given by the department that the proposed annexation is against the public interest." *See* Section 66.0217(8). Both of these mandates expressly apply to the other types of annexations authorized under subsection (3) of the statute. *See id.* Instead, subsection (2) specifies a more abbreviated procedure for a "direct annexation by unanimous approval." Within five days of the filing of the petition with the city or village, a "copy of the scale map and a legal description of the territory to be annexed" must be mailed to the department, and "the governing body shall review the advice of the department, *if any,* before enacting the annexation ordinance." Section 66.0217(2) (emphasis added).

¶ 12. We conclude that the plain language of Wis. Stat. § 66.0217(2), when read together and compared with the provisions in § 66.0217(6) and (8), does not require the Village to inform the department of its intention to annex less than all of the parcels originally proposed for annexation that were submitted for the department's review. Section 66.0217(2) provides the department an opportunity to express its opinion on whether a proposed "direct annexation by unanimous approval" is in or against the public interest. Although a governing body must review any advice it receives from the department prior to granting any petitions under subsection (2), the "if any" proviso means that it need not await the department's advice prior to proceeding. We therefore agree with the Village that review by the department is a permissive adjunct of the annexation procedure under § 66.0217(2), not a pre-condition

for the enactment of a valid annexation ordinance under that subsection.

¶ 13. Furthermore, we note that the failure to annex the twelfth parcel did not drastically affect either the size or general shape of the annexation. The annexation by the Village of only eleven of the twelve petitions slightly altered the boundaries of the overall annexation but did *not* affect its contiguity with the existing village boundary. The twelve petitions comprised over 200 acres flanking both sides of U.S. Highway 12 as it proceeds north from the village. The annexation's "attachment" to the village's existing boundary via a wedge-shaped nine-acre parcel was not affected by the deletion of the twelfth parcel. Even with all twelve parcels included, gaps would have existed along both the east and west sides of the highway. That is, as one proceeds north along USH 12, the initially proposed annexation involved parcels on both sides of the highway, sometimes including frontage on each side but sometimes only on one side. The deletion of the twelfth parcel (23 acres) simply created an additional gap along the west side of the highway.

¶ 14. The annexation as enacted was therefore slightly smaller and slightly more irregular in shape than the annexation submitted to and reviewed by the department. Had the department reviewed the eleven parcels actually annexed, its advice might or might not have changed,[3] but even if it had, the department's

---

[3] The department's Director of Municipal Boundary Review testified at a deposition that the department's opinion regarding the annexation as adopted might have been different than its opinion regarding the initially proposed twelve-parcel annexation. He acknowledged, however, that (1) the Village was not required to grant all twelve petitions, (2) there was no requirement that the department review the annexation as adopted,

advice was not binding on the Village. *See Town of Medary v. City of La Crosse*, 88 Wis. 2d 101, 112, 277 N.W.2d 310 (Ct. App. 1979).

¶ 15. As we have discussed, receipt of the department's advice was not a precondition for the enactment of a valid ordinance under WIS. STAT. § 66.0217(2). We cannot conclude, therefore, that the Village's failure to obtain the department's advice regarding the annexation of eleven parcels instead of twelve was fatal to the ordinance. The Village strictly complied with § 66.0217(2): it submitted to the department the descriptions and scale maps of all the parcels that were petitioned to be annexed, and it reviewed the advice it received from the department prior to acting on the petitions. Nothing in the statute prohibits the Village from annexing less than all of the land originally proposed for annexation.

¶ 16. The Town also suggests, however, that the granting of only eleven of the twelve annexation petitions without specific notice to it that the Village intended to proceed in that fashion somehow prejudiced its ability to object to the annexation. The Town asserts that, had it known of the deletion of the twelfth parcel, it would have taken some (unspecified) action upon receiving notice of that fact. We are a bit perplexed by this argument, in that it implies that the Town would not have challenged the twelve-parcel annexation had it proceeded as originally proposed. The Village's decision not to annex one 23–acre parcel because its owner no longer wished to have it become a part of the Village would seem to benefit the Town because the net result

and (3) the annexation as enacted maintained "contiguity" with the village without the twelfth parcel.

was the Town's loss of less land than originally proposed. Moreover, the deletion of the twelfth parcel did not in any way impair the Town's ability to challenge the annexation in this action. In short, we find no invalidity in the ordinance stemming from the Village's failure to notify the Town in advance that it intended to annex less land than originally proposed.

¶ 17. Finally, the Town asserts that, once filed, a petition for annexation is "irrevocable" and, thus, the twelfth petition could not legally be "withdrawn." In support of this argument, it cites our opinion in *Town of De Pere v. City of De Pere*, 184 Wis. 2d 278, 516 N.W.2d 1 (Ct. App. 1994). Our holding in *De Pere* would have permitted the Village to annex the twelfth parcel despite the owner's belated change of heart regarding annexation. *Id.* at 285–86. Nothing in our opinion, however, requires the Village to grant the petition of the one owner who ultimately requested that his parcel not be annexed. In short, although an annexation petition may not be withdrawn by a petitioner once it is filed, neither WIS. STAT. § 66.0217(2) nor our opinion in *De Pere* prohibits a municipality from declining to annex a given parcel for any reason, including a petitioner's desire not to be annexed.

*The Rule of Reason*

¶ 18. The Town's final argument is that the annexation violates the "rule of reason." We recently described the purpose of the rule and its application as follows:

> The doctrine known as the "rule of reason" is applied by the courts to ascertain whether the power [to annex unincorporated territory] delegated to the cities and

villages has been abused in a given case. When a challenge is made to an annexation ordinance based on the rule of reason, the ordinance enjoys a presumption of validity and the challenger has the burden of showing that the annexation violates the rule of reason. "The rule of reason does not authorize a court to inquire into the wisdom of the annexation before it or to determine whether the annexation is in the best interest of the parties to the proceeding or of the public. These matters are inherently legislative and not judicial in character." For this reason, "the circuit court is directed to be highly deferential to the actions taken by the City in annexing the property."

*Town of Campbell*, 268 Wis. 2d 253, ¶ 19 (citations omitted).

¶ 19. When reviewing a circuit court's determination on the rule of reason, we accept its findings of fact unless they are clearly erroneous. *Id.*, ¶ 20. Here, of course, we are reviewing a grant of summary judgment, which means the circuit court made no factual findings, but relied on undisputed facts.[4] Whether the undisputed facts meet the legal standards of the rule of reason presents a question of law, which we decide de novo, bearing in mind the deference owed to the Village's decision to annex the land in question. *Id.*

¶ 20. The rule of reason has three components:

> To pass muster under the rule of reason, the annexation must satisfy three requirements: (1) exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) some reasonable present or demonstrable future need for the annexed property

---

[4] The Town makes no claim that disputed issues of material fact exist that would preclude summary judgment.

must be shown; and (3) no other factors must exist which would constitute an abuse of discretion on the part of the municipality.

*Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 189, 488 N.W.2d 104 (Ct. App. 1992). The Town contends that the challenged annexation violates the first and third requirements. It makes no argument regarding the "need" requirement.

¶ 21. As to the first requirement, that "the exclusions and irregularities in boundary lines of annexations must not be the result of arbitrariness[,] . . . [t]he general rule is that where direct annexation proceedings are initiated by property owners, the annexing municipality may not be charged with arbitrary action in drawing the boundary lines." *Town of Campbell*, 268 Wis. 2d 253, ¶ 21 (citation omitted). We explained in *Town of Campbell* that petitioning land owners are empowered by the annexation statutes to act in their own best interests as they see them and "are under no obligation to include areas in the annexation that are of no concern to them." *Id.*

¶ 22. The Town acknowledges the foregoing general rule, which essentially removes the first requirement of the rule of reason from consideration in owner-petitioned annexations, but it claims that there remains an outer limit of irregularity that even owner-initiated annexations cannot transgress. The circuit court described the boundaries of the current annexation as "somewhat irregular," a characterization with which we agree. (See ¶¶ 13–14 above.) The town would have us go further, however. It asks us to declare that the present annexation results in the type of "gerrymandered" or "crazy quilt" municipal boundaries that the

497

supreme court concluded in *Town of Mt. Pleasant v. City of Racine*, 24 Wis. 2d 41, 127 N.W.2d 757 (1964), violated the rule of reason notwithstanding the fact that the annexation was initiated by property owners. The Town points out that the annexation's north-south extension is "one and one-half times longer than the Village length prior to annexation" and it connects to the Village "by a sliver of land just over 200 feet wide, at its southern tip." The Town maintains that the present annexation is thus similar to the one struck down in *Town of Mt. Pleasant* that attached a 145–acre parcel to the City of Racine via a 1705–foot corridor varying in width from 152 to 306 feet. *Id.* at 45.

¶ 23. We conclude that the present annexation, although it produces an arm-like extension of the northern municipal boundary of the Village of West Baraboo, does not violate the first component of the rule of reason. It is not a "shoestring" or "balloon on a stick" annexation whereby the Village has relied solely on highway right-of-way to "capture" a distant prized parcel. Rather, it consists of parcels flanking both sides of a highway corridor, whose owners sought annexation. The corridor in question has experienced increased traffic flow and development pressure in recent years, and the Village maintains that annexation of the parcels will allow it to plan for orderly commercial and industrial development, served by appropriate municipal services. As in *Town of Campbell*, we do not find the present annexation to be of a kind that removes it from the "general rule" that owner-petitioned annexations should not be invalidated under the first component of the rule of reason. *See Town of Campbell*, 268 Wis. 2d 253, ¶ 27 (concluding that it is "the better course to

follow" more recent supreme court analysis of the issue as opposed to that in *Town of Mt. Pleasant*).[5]

¶ 24. There is, however, a well-recognized exception to the "general rule" regarding owner-petitioned annexations: a municipality may be "charged with any arbitrariness in the boundaries" of an owner-petitioned annexation where it can be shown to have been the "real controlling influence" in selecting the boundaries. *Id.*, ¶ 22. The Town argues that the record before us shows that the present annexation comes within this exception. According to the Town, "the Village improperly influenced the petitioners by actually carrying out the annexation petitioning procedure for the petitioners and by refusing to give extraterritorial plat approval until property was annexed."

¶ 25. We concluded in *Town of Campbell* that providing forms to prospective annexation petitioners, preparing maps and legal descriptions for the petitions, and providing other advice and "technical assistance" to petitioners did not render the municipality the "controlling influence" behind the annexation petitions. *Id.*, ¶ 25. The Town contends, however, that the present record demonstrates greater and more sinister involve-

---

[5] We observed in *Town of Campbell v. City of La Crosse*, 2003 WI App 247, 268 Wis. 2d 253, 673 N.W.2d 696, that the supreme court's conclusion in *Town of Mt. Pleasant v. City of Racine*, 24 Wis. 2d 41, 127 N.W.2d 757 (1964), was "difficult . . . to harmonize with subsequent supreme court cases that recognize the right of petitioning property owners to include only their own properties and state that in such situations the annexing municipality is not charged with arbitrariness, as long as it is not a controlling influence." *Town of Campbell*, ¶ 27. We noted further that "clarification by the supreme court on the significance of *Town of Mt. Pleasant* . . . , in light of later case law, would be beneficial to the development of the law in this area." *Id.*, ¶ 27 n.7.

ment by the Village in procuring the instant petitions. The Town claims that the Village not only did all of the things noted in *Town of Campbell*, but that it also *"initiated* the idea for the annexation and had *its engineer map out and select the people to invite for annexation."*

¶ 26. The record citation the Town provides for its underlined assertion is to the deposition testimony of a Village engineer. In this testimony, the engineer explained that owners of certain parcels along USH 12 were identified by Village personnel from a plat map and sent letters inviting them to an informational meeting regarding annexation. Other testimony from the engineer, however, as well as that of other witnesses, shows that the meeting was arranged only after several property owners in the area had contacted the Village requesting information regarding a possible annexation. The Village decided to entertain these requests and to assist the property owners in their efforts to inform other owners in the area of the possible benefits of annexation and the procedures required to accomplish it.

¶ 27. The extent of the Village's involvement was summarized by the following questions put to the Village attorney when being deposed by the Town's counsel:

> Q So, at the end of the meeting, I take it, you had explained the process, [two engineers] had discussed the availability of water and sewer to annexing people, and you had advised everybody, if you are interested and you get all of the contiguous landowners, here are the forms that need to be completed and filed?
>
> A Yes.
>
> Q So, the ball was then in the court of the landowners?

A Yes.

There are also eleven affidavits in the record from the owners of the annexed parcels, each averring that he or she "acted freely and voluntarily and without any coercion or undue influence" from the Village or adjoining landowners. The affiants cite obtaining water and sewer improvements and the desire to pursue commercial development as motivating their annexation petitions.

¶ 28. Finally, we note that the annexed land does *not* include all parcels fronting on USH 12 north of the Village—excluded are those parcels whose owners did not choose to file petitions, and, in one case, the parcel of the owner who petitioned and then changed its mind. This fact supports the Village's contention that the landowners (and not it) were the "controlling influence" behind this annexation.

¶ 29. We conclude the present record falls far short of establishing, or placing in dispute, that the Village was the "real controlling influence" that orchestrated the present annexation, such that we should attribute the selection of boundaries to the Village. The advice, information and assistance the Village provided to those interested in petitioning for annexation are well within the bounds of the activities we found not to be a "controlling influence" in *Town of Campbell*. The fact that the Village assisted the initial interested parties in identifying and informing other landowners in the area of the possibility and procedure for annexation does not alter this conclusion. *See Town of Pleasant Prairie v. City of Kenosha*, 75 Wis. 2d 322, 340, 249 N.W.2d 581 (1977) (concluding that a city planner's advice to a petitioner to include additional identified

land in an annexation petition, in order to satisfy contiguity concerns and facilitate municipal service installation, did not render the petitioner an "agent of the City in carrying out a municipal scheme").

¶ 30. The Town's asserted violation of the third requirement of the rule of reason is that the Village abused its discretion by improperly exercising its extra-territorial plat approval authority to require annex-ation as a precondition for obtaining Village approval for development of the parcels in question. The Town cites *Hoepker v. City of Madison Plan Commission*, 209 Wis. 2d 633, 649, 563 N.W.2d 145 (1997), as supporting its assertion. The record, however, does not support the Town's assertion that the Village improperly denied a request for plat approval prior to the annexation. The portion of the record on which the Town relies shows only that a Village official informally responded to an inquiry from one of the petitioning owners, telling him that, pursuant to the Village's subdivision ordinance, it would not approve the subdivision of unsewered land into parcels of less than twenty acres. We agree with the Village that it may properly exercise its extraterritorial plat approval authority in accordance with provisions in its subdivision ordinance. *See Wood v. City of Madison*, 2003 WI 24, ¶ 37, 260 Wis. 2d 71, 659 N.W.2d 31. Thus, even if the record established the Village had refused to approve a proposed plat on this basis, it would not constitute an "abuse of discretion" that violates the rule of reason.

*Town's Standing to Challenge TIF Amendment*

¶ 31. The final issue in this appeal does not in-volve the annexation proceeding itself but an action the

Village took after it enacted the annexation ordinance. The Village amended an existing Tax Incremental Financing (TIF) district to include lands recently added to the Village by the challenged annexation. The Town alleged as a separate claim in its complaint that the TIF district, as amended, did not satisfy statutory requirements for TIF districts. The circuit court dismissed this claim on the Village's motion, agreeing with the Village that the Town lacked standing to challenge the TIF amendment. The Town claims the circuit court erred in so doing. We disagree.

¶ 32. WISCONSIN STAT. § 66.1105 authorizes Wisconsin municipalities to establish TIF districts to assist them in financing public improvement projects in areas that are blighted, needing rehabilitation or suitable for industrial development. *See City of Hartford v. Kirley*, 172 Wis. 2d 191, 197, 493 N.W.2d 45 (1992). This goal is accomplished by permitting the municipality to divert property tax revenues generated as a result of increased property values in a designated TIF district to pay for municipal improvements or development assistance provided within the district. The diverted revenues would otherwise be distributed among the municipality and overlying property-taxing districts (e.g., counties, school and technical college districts) to support their respective budgets. Once the TIF-financed improvement costs are paid, the full (and presumably increased) value of property in the district is again made available to provide tax support to the other taxing entities.

¶ 33. Because the creation of a TIF district thus affects revenues available to support county, school and vocational district budgets, the legislature has directed that these overlying taxing entities be notified of proposals to create or amend TIF districts, and further

that representatives of each be members of "joint review boards" that must approve proposed TIF districts or amendments to them. *See* WIS. STAT. § 66.1105(4) and (4m). Significantly, towns adjacent to a TIF-creating municipality are *not* included in these provisions. This makes sense because towns derive their tax revenues solely from property within the towns. The placement in a TIF district of land situated in a city or village has no impact on the property tax base available to support an adjoining town's budget. We thus agree with the Village that the harm to the Town and its finances stem solely from the annexation of the parcels in question, not from the Village's subsequent action to include some or all of them within a TIF district.

¶ 34. The Town argues, however, that the inclusion of annexed lands in the TIF district constitutes a separate source of harm to its interests. It asserts correctly that, all other things being equal, the enlargement of the TIF district to include additional property within the Village means that "an increased portion of the shared expenses of the school district, technical college district and the county" will be borne by those who own property lying within the Town. The Town notes that in *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 529 N.W.2d 245 (Ct. App. 1995), we concluded that a town had standing to challenge the assessment practices of an adjoining town that resulted in "inequities in equalized values of property and increased taxation for agricultural landowners" in the plaintiff town. *Id.* at 316–17. The Town argues that the TIF amendment it seeks to challenge produces the same effect on its property owners, and thus, it has standing to have the amendment declared invalid.

¶ 35. Whether a party has standing to seek declaratory relief is a question of law we decide de novo. *Id.* at 315. In deciding the question, we inquire whether the plaintiff has "a legally protected interest in the controversy, or, in other words, a personal stake in its outcome," and in making the inquiry, we are to view the plaintiff's interests liberally, not restrictively, and grant standing if the harm to those interests is "no more than a trifle." *Id.* at 315–16.

¶ 36. We conclude that our determination of the standing question in *Town of Eagle* does not control on the facts before us. In addition to the harm suffered by certain owners of land lying in the plaintiff town on account of the neighboring town's assessment practices, the plaintiff in *Town of Eagle* suffered direct harm to its own financial interests because the "inequitable valuations" it complained of formed "the basis of its allocation of shared revenue and debt limits." *Id.* at 316. That is not the case here, and the Town points to no financial interests of its own, as a governing and taxing entity, that are adversely affected by the enlargement of the Village's TIF district.[6]

---

[6] The Town does assert that the Village's TIF amendment to include newly annexed lands "will cause an irreversible adverse impact to the rural character and scenic beauty of the Town." Except for the statement of that assertion, however, it makes no effort in its opening brief to develop or support with authorities a claim that a town enjoys a legally protected interest in its "rural character and scenic beauty." We generally do not address arguments that are inadequately developed, *see State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992), and we decline to do so here. Moreover, we note that much like the financial harm to the town allegedly flowing from the TIF amendment, any degradation of the rural character and

¶ 37. In summary, we conclude that the legislature has identified those entities that have a legally protected interest in the formation and amendment of TIF districts—the TIF-creating municipality, and the county, school and vocational districts in which the TIF district lies. TIF districts can be created or amended without notice to or input from towns that adjoin the creating municipality. *See* WIS. STAT. § 66.1105(4) and (4m). Although property taxpayers in adjoining towns that lie within the same overlying taxing districts are arguably affected when TIF districts are created or amended, the towns themselves are not, and thus towns lack "a personal stake in the outcome of the controversy." *See City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983). We agree, therefore, with the Village and the circuit court that the Town had no legally protected interest at stake in the amendment of the Village's TIF district. Consequently, the Town lacks standing to challenge it in this action.

## CONCLUSION

¶ 38. For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Judgment affirmed.

scenic beauty of the area in question is largely, if not entirely, attributable to the annexation of the lands in question, which, by design, will allow for the provision of municipal services to and the commercial and industrial development of the annexed land. The TIF device may facilitate financing of this outcome, but it is the annexation itself that truly impacts the Town and its asserted interests, both financial and aesthetic.